## Miners Saving Bank of Pittston, Appellant, v. Hart et ux.

Argued April 12, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*M. J. Mulhall,* with him *John T. Mulhall,* for appellant.

*Kenneth English,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1944:

Plaintiff here is seeking by indirection to accomplish what the plaintiff in *Walker v. Oakley,* 347 Pa. 405, 32 A. 2d 563, was not allowed to accomplish directly, and for the same reasons as were there stated this attempt also must fail.

On March 20, 1923, Robert Denee and Beatrice Denee, his wife, in consideration of a loan from the

Dime Bank of Pittston (afterwards entitled Dime Bank & Trust Company) executed and delivered to it their promissory note in the sum of $5,000. As collateral security they gave their bond and mortgage in the same amount, the mortgage constituting a first lien on the property occupied by them as their home. On the same date defendants, Martin P. Hart and Angela Hart, his wife (the former being a brother of Beatrice Denee), executed and delivered to the Bank *their* bond and mortgage, likewise in the same amount; the mortgage covered real estate owned by them in Pittston and recited that it and the accompanying bond were given as additional security for the payment of the Denee note.

In 1934 the Denees applied to the Home Owners' Loan Corporation for the refinancing of their indebtedness and in connection with that application the Bank gave to the Loan Corporation its consent in writing, if the refunding could be consummated, to accept *in full settlement of its claim* the sum of $2,690.78 in bonds of the Corporation (including a necessary small cash adjustment) and thereupon *to release all its claim against the Denee property.* The application was granted and the Denees executed and delivered to the Corporation their bond and mortgage in the sum of $3,484.54, the mortgage covering their same home property; the Corporation, on August 3, 1934, delivered to the Bank its bonds in the amount of $2,650, together with $40.78 in cash, and the Bank satisfied the Denee mortgage of record. In 1937 the Loan Corporation entered judgment on the Denee bond and issued execution, with the result that the Denee home was sold at sheriff's sale to the Corporation for $110.13.

In 1942, Miners Savings Bank of Pittston, to which the Dime Bank had assigned the Hart bond and mortgage, sued out a writ of sci. fa. on that mortgage, claiming that there was due thereon the sum of $2,822.31 with interest from November 15, 1935. Defendants, the Harts, filed an affidavit of defense asserting that inasmuch as

their mortgage had been given to the Dime Bank only as additional security for the payment of the Denee note, and inasmuch as the Bank had accepted the bonds of the Home Owners' Loan Corporation in full settlement of its claim against the Denees, defendants had thereby been automatically discharged from their obligation. Obviously this was a complete defense. But at the trial, which took the form of a hearing before a referee, plaintiff produced in evidence an agreement of August 3, 1934 (the same date as that on which the Loan Corporation had delivered its bonds to the Bank) signed by the Denees and the Harts. This agreement recited that whereas the Denees were indebted to the Dime Bank in the sum of $4,917.72 together with unpaid interest amounting to $568, which indebtedness was secured by the Denee mortgage and also by the Hart mortgage; and whereas the Denees desired to refinance this indebtedness by a loan from the Home Owners' Loan Corporation and to relieve the Harts "of their responsibility insofar as can be done"; and whereas the Loan Corporation was willing to issue to the Bank its bonds in the sum of $2,650 and also pay all unpaid taxes on the Denee property; and whereas this would leave the Bank with a deficiency of $2,822.31; therefore it was agreed that the Hart mortgage should be the sole security for such unpaid balance in favor of the Bank, and the Bank was thereby requested to satisfy the Denee mortgage in order that the Loan Corporation should make the loan requested of it and deliver its bonds to the Bank in the amount stated; it was further agreed that, to secure the Harts for their liability to the Bank for the deficiency, the Denees should give to the Harts a mortgage on their property in the amount of $2,795.44. Plaintiff also placed in evidence the mortgage which the Denees had given to the Harts in pursuance of this agreement, constituting a second lien on their home subject to the mortgage of the Loan Corporation. Plaintiff claimed, as the result of these documents, that defendants' mortgage

had not been extinguished by the satisfaction of the Denee mortgage but had continued in force as security for the deficiency of $2,822.31. Defendants thereupon produced testimony, uncontradicted by plaintiff, which revealed that the agreement of August 3, 1934, and the mortgage from the Denees to the Harts were prepared by the attorney for the Bank; that an officer of the Bank summoned the Denees and the Harts to a meeting on that day and told them they "had to sign" those documents and if they refused to do so the Bank would foreclose on both the Denee and the Hart properties and would not accept the refunding bonds of the Loan Corporation; that prior to that meeting there had been no suggestion on the part of anyone of a second mortgage; that the agreement and the mortgage were signed only because of the Bank's threat; that no information concerning this transaction was given to the Loan Corporation and that the latter was not aware, therefore, that the Denees were placing this additional mortgage on their home. It was further shown that the Harts never made any payments on their mortgage but that the Denees themselves paid the interest as long as they were able to do so. Ultimately, as has been stated, the Loan Corporation foreclosed its own mortgage.

The referee decided that plaintiff was entitled to recover on the Hart mortgage, but the court sustained exceptions to his report and entered judgment for defendants. Plaintiff appeals.

In *Walker v. Oakley*, 347 Pa. 405, 32 A. 2d 563, the same factors as those which control the present situation were discussed and the authorities bearing upon the subject collated. It was pointed out that the object of the Home Owners' Loan Act was not to improve the security held by the mortgagee but to relieve the owner, in a period of economic depression, from the danger of having his home swept away in foreclosure proceedings; that if he were to remain burdened by the same loan of indebtedness on his property as that which existed be-

fore the refunding operation such danger would not be averted; that by the rules and regulations of the Home Owners' Loan Corporation it was provided that although second liens were permissible under some circumstances they would not be allowed if, in the opinion of the Corporation, they were likely to work an undue hardship on the owner and deprive him of reasonable opportunity to keep up the necessary payments; that accordingly the courts have held with almost complete unanimity that if an agreement between the parties for a second mortgage was not brought to the knowledge of the Loan Corporation, whether because of a deliberate intent to preserve secrecy or even because of the mortgagee's ignorance of the law, and therefore the approval of the Loan Corporation was not obtained, the agreement was void. It is perfectly clear, therefore, that if the Denees had contracted with the Bank to give it a second lien on their home property representing the difference between their original liability and the amount received by the Bank from the Loan Corporation such agreement and the mortgage given in pursuance of it would have been invalid and unenforceable.

The question here is whether it makes any difference because, instead of a mortgage by the Denees to the Bank, the Harts agreed to give a mortgage on *their* property to the Bank (or, which is the same thing, that their existing mortgage, otherwise extinguished, should continue in force) and the Denees in turn agreed to give a mortgage on their home to the Harts by way of indemnity. It is too plain for argument that these two transactions, when combined, are the exact equivalent of a single transaction in which a mortgage is given by the debtor directly to the mortgagee, and that the purpose of the Home Owners' Loan Act is frustrated as completely in the one case as in the other. The Bank was not a formal party to the agreement but relies upon it as a third-party beneficiary; it was executed on the insistence and solely for the purposes of the Bank; while

ingenious, it amounts to nothing but a transparent façade for an attempted circumvention of the law. That it ran counter to the object of the Home Owners' Loan Act is demonstrated by what followed, for it was the Denees, not the Harts, who continued to make interest payments to the Bank on the amount of the deficiency; they remained subject to the same indebtedness as before and the burden was too much for them as shown by the fact that within three years they lost their home by foreclosure and the relief they had obtained from the Loan Corporation proved unavailing. The Corporation had refinanced the property to 80% of the appraised value of $4,355.67, and it is one of its fundamental rules that "No . . . second mortgage will be allowed under any circumstances that is for more than the difference between our appraisal and the amount of our first mortgage," so that if the agreement as to the second mortgage had been brought to its attention—instead of the deceptive statement by the Bank that it was accepting the bonds of the Corporation in full settlement of its claim—it is certain that the Corporation would not have been willing to extend relief which was so likely to prove, and in fact turned out to be, wholly abortive.

The gist of plaintiff's contention is that the Hart mortgage to the Bank and the Denee mortgage to the Harts were two distinct and independent transactions and that therefore the validity of the Hart mortgage was not impaired by the invalidity of the Denee mortgage. It is true that the two mortgages were written on separate pieces of paper, but the agreement which gave them their twin birth—or, more accurately, created the one and revived the other—constituted a unitary plan. It would be unrealistic to regard the transaction in its entirety as other than an integrated one or the mortgages as other than the component and inseparable parts of an illegal device.

Judgment affirmed.