## McGrath Estate.

Argued December 14, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Joseph M. Smith,* with him *Alexander Fried,* for appellant.

*Richard T. McSorley,* attorney for executors, at the request of the Court, filed a brief as amicus curiae.

OPINION BY ARNOLD, J., April 10, 1946:

In 1931 Susan McGrath gave her bond and mortgage to the Oakdale Building and Loan Association, now in

the hands of liquidating trustees. The debt of $3,000 was secured by Philadelphia real estate. In 1937 the mortgagor died and devised her real estate to two nephews. In 1939 Oakdale, by scire facias, reduced the mortgage to judgment and the premises were sold by the sheriff in March, 1940, to the mortgagee for $1890. The fund, after costs, was distributed to municipal tax claims of the city for the years 1933 to 1940 inclusive, leaving a balance of $10.26 to the mortgagee. The mortgagee never petitioned the court to fix the fair market value under the Deficiency Judgment Act of July 16, 1941, P. L. 400, (12 P.S. 2621.1 et seq.)[1]

The mortgagee, now the owner of the premises, filed a claim against the mortgagor's estate for $1654.86, the amount of taxes paid by the sheriff's distribution, on the theory of subrogation. The Orphans' Court rejected the claim and Oakdale appealed.

As to taxes for the years 1938, 1939 and 1940, aggregating $492.22, the estate is not liable, for Susan McGrath was not the owner, having died in 1937, and her estate is not personally liable for taxes accruing subsequent to her death: *Gormley's Appeal*, 27 Pa. 49.

Where a mortgagee-purchaser does not proceed to have the fair value fixed, the effect of the Deficiency Judgment Act is to create an irrebuttable presumption that the creditor was paid in full in kind. Under the Act. the debtor may not waive the benefits of the Act nor relieve the obligee from complying therewith, and any attempted waiver or release is absolutely void (§10, 12 P.S. 2621.10). Under §6 (12 P.S. 2621.6) where proceedings to determine the fair value are brought, "the debtor, obligor, guarantor and any other person liable directly or indirectly to the plaintiff . . . shall be released and

---

[1] Under section 7 (12 P.S. 2621.7) the petition of mortgagee is required to be filed within six months after the effective date of the Act. The Act is constitutional: *Fidelity-Philadelphia Trust Co. v. Allen*, 343 Pa. 428, 22 A. 2d 896; *Pennsylvania Co. etc. v. Scott*, 346 Pa. 13, 29 A. 2d 328.

discharged of such liability to the plaintiff to the extent of the fair market value . . . , *less the amount of all prior liens, costs, taxes and municipal claims . . . paid at the distribution on the sale,* and shall also be released and discharged . . . to the extent of any amount by which the sale price, less such prior liens, costs, taxes and municipal claims exceeds the fair market value . . . , and thereupon petitioner may proceed *by appropriate proceedings* to collect the *balance* of the debt." (Emphasis supplied).

The Act should be construed broadly as in *Pennsylvania Co. etc. v. Scott,* 346 Pa. 13, 19, 29 A. 2d 328, where the word "debt" used in the Act was held to include a judgment in tort as well as a judgment in assumpsit. See also *Union Trust Company, etc., v. Tutino,* 353 Pa. 145, 44 A. 2d 556.

The appellant's position is distinctly adverse to the public policy inherent in the Act. This can be well illustrated by the facts in this case. We will use approximate figures. Appellant's judgment was $1300, the taxes for which subrogation is claimed were $1650, the costs were $225. The total amount to which appellant was entitled was therefore $3175. Now if the real estate was of the fair value of $3175 *or any greater amount,* and if appellant *had* brought valuation proceedings under the Act, it obviously could not obtain any deficiency judgment. But according to appellant, by the theory and means now employed, it may obtain $1650 more by disregarding the Act than it could obtain by adhering to it. If appellant's debt were only $300 and the taxes $2600, and costs $225, and the fair value $3175, a worse situation is presented. There is not, and cannot be, a showing that the mortgagor was unjustly enriched. In addition the appellant-purchaser, at its own sheriff's sale, acquired the real estate by its own bid sufficient to discharge the tax claims.

The construction that we thus give to the Deficiency Judgment Act is the same type adopted in other situa-

tions to protect the purpose of an act. In *Miners Saving Bank of Pittston v. Hart et ux.,* 349 Pa. 468, 37 A. 2d 570, one Denee gave his bond and mortgage to a bank. One Hart gave his bond and mortgage on the Hart premises for the same amount, to the same bank, as collateral security for the Denee loan. Denee refinanced in Home Owners' Loan Corporation. The bank received less than the amount of its mortgage. The Hart mortgage was sued out. The Supreme Court, speaking through Justice STERN, pointed out that if Denee had given a mortgage second to the Home Owners' Loan Corporation mortgage, to the original mortgagee, such second mortgage would be uncollectible, and at page 473 stated: ". . . these two transactions, [the Denee mortgage and the Hart mortgage] when combined, are the exact equivalent of a single transaction in which a mortgage is given by the debtor directly to the mortgagee, and that the purpose of the Home Owners' Loan Act is frustrated as completely in the one case as in the other." Justice STERN also said that the device, ". . . while ingenious, it amounts to nothing but a transparent facade for an attempted circumvention of the law." The language in the *Hart* case is quite applicable to the situation at bar.

Subrogation in favor of the mortgagee *against the grantee of the mortgagor* for taxes accruing subsequent to the mortgagor's deed is well-recognized: *Pennsylvania Co. etc. v. Bergson,* 307 Pa. 44, 159 A. 32; *Republic Building and Loan Assn. v. Webb,* 12 Pa. Superior Ct. 545; *Hogg v. Longstreth,* 97 Pa. 255. In the *Hogg* case subrogation was allowed on the theory that "the law infers that the debtor [of the taxes] requested such payment." If that were the only theory, subrogation would fail in the instant case, because the mortgagor died in 1937 and the taxes were not paid until 1940: *Gormley's Appeal,* 27 Pa. 49. Subrogation has also been allowed on the theory of unjust enrichment, and the Restatement—Restitution—§162, states the rule as follows: "Where property of one person is used in discharging an obliga-

tion owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder." No case is pointed out or found where the mortgagee has had subrogation *against the mortgagor* as to taxes accruing during the *mortgagor's ownership.* It may be doubted whether such doctrine can operate, for such personal liability exists under the mortgage, (unless limited to the res,—which the instant mortgage was not) especially, as here, where the mortgagor covenanted with the mortgagee to pay the taxes.

Subrogation is an equitable doctrine and must depend upon inherent justice and some principle of equity jurisprudence, usually unjust enrichment. It cannot, therefore, be allowed where it would be contrary to public policy, or where it accomplishes by indirection that which a statute forbids to be done by direction. The rule is well stated in 60 C.J.—Subrogation—§8: ". . . It will not be enforced unless there is some equitable doctrine upon which it can be predicated, and only when the applicant therefor has an equity to invoke and his cause is just and its enforcement is consonant with right and justice, and then only in a clear case. *It will not be allowed where it would be contrary to public policy, or where it would accomplish by indirection that which a statute forbids to be done by direction . . .*" (Emphasis supplied).

In our opinion there can be no subrogation here, both because there was no unjust enrichment of the mortgagor and also because to apply the doctrine of subrogation permits the appellant mortgagee to do by indirection what the Deficiency Judgment Act forbids to be done.

It is alleged that the Act is unconstitutional if we hold that the Act applies to subrogation claims for taxes, —because the word "taxes" does not appear in the title.

84

Since we hold that there is no subrogation, the alleged defective title is not involved. But the title states: "An Act to protect the debtors, obligors or guarantors of debts for which judgments are entered . . ." The taxes were "judgments". In addition, both under the tax clause of the mortgage and under the claim of the appellant for subrogation, the taxes were a debt owed by mortgagor to mortgagee along with, and merged into, the mortgage debt. It is highly questionable whether appellant can split this merged debt and thus avoid the Act. That the debt and obligation of the mortgagor to the mortgagee for these taxes merges into the mortgage debt and cannot be split was the holding in Iowa in the case of *Monroe v. Busick*, 281 N.W. 486.

We acknowledge the help of the brief filed by attorney for the Executors as amicus curiae at the request of this Court.

Judgment affirmed.