Marx Realty and Improvement Co., Inc. *v.*
Boulevard Center, Inc. (et al., Appellant).

Argued November 17, 1959. Before JONES, C. J.,
BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE,
JJ.

*Abraham L. Freedman,* with him *Mitchell E. Panzer, Morris Wolf,* and *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*George B. Clothier,* with him *Walter J. Collins, Herbert A. Fogel,* and *Obermayer, Rebmann, Maxwell and Hippel,* for appellee.

OPINION BY MR. JUSTICE BOK, December 30, 1959:

The following case stated, abbreviated for convenience, was presented to the court below:

On November 28, 1952, Boulevard Center executed its note payable to First Pennsylvania in the sum of $2,500,000 for a loan. As collateral security it executed its bond and warrant and a mortgage on certain Philadelphia real estate which was to be developed. These documents were signed and delivered and the loan was made. The Center also assigned to First Pennsylvania existing and later leases.

The development was not a success, and on November 12, 1954, the Center having defaulted on the obligations mentioned above, First Pennsylvania entered the Center as mortgagee in possession, thereafter

receiving rents, making disbursements, and applying the balances against the debt.

On October 7, 1955, First Pennsylvania privately bought the bond, warrant, and mortgage according to the terms of the collateral note, and on October 13th entered judgment on the bond. Damages were assessed at $2,714,588.26, and a fieri facias issued. In the assessment of damages the Center was given credit for $26,974.24, the net balance of rents.

On October 21, 1955, plaintiff took judgment for want of an answer to its complaint claiming commissions for negotiating leases. Damages were assessed at $23,716.18. Attachment execution was issued on October 27th and was served on First Pennsylvania as garnishee.

Sheriff's vendue was held on November 7, 1955, the successful bidder being the garnishee's attorney on the writ with a bid of $16,000.

On November 15, 1955, First Pennsylvania credited the Center with $15,224.16, for net rents received after the Sheriff's auction, and with further like credits for rents collected between January 23rd and October 17th, 1956, in the sum of $46,830.85, or a total credit of $62,055.01. Garnishee thus claims a balance of deficiency judgment due it of $528,739.63.

The successful bid was assigned on January 13, 1956, to J. F. Realty Co., a concern unconnected with First Pennsylvania, for a consideration of $2,225,000. The Sheriff conveyed the subject real estate to this assignee by deed dated January 13, 1956, and duly recorded on January 25th.

On July 13, 1956, First Pennsylvania filed its petition to fix the fair value of the real estate under the Deficiency Judgment Act of July 16, 1941, P.L. 400, 12 P.S. §2621.1 et seq. Service and notice were duly made. On September 24, 1956, the foreclosure court

by decree fixed the fair value at $2,150,000 and released the Center from the judgment of $2,714,588.26 to the extent of $2,123,793.52, this figure being the fair value minus costs and taxes. There was no appeal.

It will be seen that the petition to fix the fair value was filed more than six months after the Sheriff's vendue but just within six months after the delivery of the deed. The dispositive question is whether the petition was timely.

Section 7 of the Act, 12 P.S. §2621.7, reads as follows: "The plaintiff or plaintiffs shall file all petitions in accordance with section one and section two of this act not later than six months after the sale of any real property: Provided, however, That if the sale occurred prior to the effective date of this act, the plaintiff shall file such petition within six months after the effective date of this act. In the event no petition is filed within such period, the debtor, obligor, guarantor and any other person liable directly or indirectly to the plaintiff or plaintiffs for the payment of the debt shall be released and discharged of such liability to the plaintiff or plaintiffs."

The Court below held that the filing of the petition was too late, relying on *St. Charles B. & L. Association v. Hamilton,* 319 Pa. 220 (1935), 179 A. 604; and *Pennsylvania Company v. Broad Street Hospital,* 354 Pa. 123 (1946), 47 A. 2d 281, and entered judgment for the plaintiff and against the garnishee. Speaking for the court below Judge FLOOD said: "The real pinch in this case is the determination of the time from which the six months period begins to run under the Deficiency Judgment Act. If the matter were res integra we would hold, as we did in Pennsylvania Co. v. Broad Street Hospital, supra, that a sheriff's sale is not completed until the delivery of the sheriff's deed. But we were reversed in that case, STERN & JONES, JJ. dissenting. If the rule of St. Charles Build-

ing and Loan Association v. Hamilton, supra, is to be modified by judicial action, it must be done not by us but by the Supreme Court."

We believe that we can properly make such modification without disturbing the cited cases, if we keep clearly in view the reasons for the proceedings under the Act.

The precise holding of the *Pennsylvania Company* case, supra (354 Pa. 123) was that the mortgagor's right of redemption is cut off by the Sheriff's hammer. The *St. Charles* case, supra (319 Pa. 220), dealing with a rule to open and to satisfy the judgment, held that the Act did not apply where the property was sold by Sheriff's sale before the passage of the Act, although the Sheriff's deed was acknowledged after the passage of the Act. We went on to say, essentially per dictum, that a Sheriff's "sale" means, in common parlance, the fall of the hammer. Both cases cite precedents from *Young's Appeal*, 2 P. & W. 380 (1831), to the *St. Charles* decision, and they give the purchaser, variously, an inchoate right, an equitable estate, an inceptive interest, or a vested interest, from the vendue. The underlying reason was given at length in *Young* and appears again near the end of the opinion in *Pennsylvania Company*, when Mr. Justice LINN said that to postpone the solution of the purchaser's interest to the delivery of the deed would be to discourage competitive bidding and to encourage fraud between the debtor and an unsuccessful bidder.

For the encouragement, repose, and protection of bidders, therefore, the sovereign rule is that their rights crystallize with the fall of the hammer. But protecting bidders is only part of the picture.

Once the successful bidder knows that his bid is protected, he yet may not get the property, since consummation may fail for a variety of reasons. He may himself decide to renege, as happened in *Conlen v.*

*Girsh,* 358 Pa. 109 (1948), 56 A. 2d 231, where it was held that in such case the Act never took hold. Since the Act requires giving credit on the judgment to the extent of the fair value, no bidder has anything from which to give credit until he gets title, and hence no sale to him can be said to have taken place until a deed is delivered. The Act obviously wants to give the execution plaintiff six months in which to move after sale, but most or even all of this time might pass in removing obstacles to title if vendue were taken as the moment to turn the hour glass. And the Legislature could easily have used restrictive language if it had intended "sale" to refer to one moment only.

Appellee suggests that the mortgagor is entitled to know six months after vendue whether or not the forfeiture of his equity of redemption has satisfied the debt. Once upon a time the mortgagor stood not only to lose his property but to suffer personal liability on his bond as well, and to require him to wait for six months plus the time between vendue and deed is no grievous price for him to pay for the unwaivable benefits of the Act. Nor do we see danger in the execution plaintiff delaying the Sheriff's deed. If he delays unduly, the Court remains in charge of the execution and of the sanctions provided by the Act, which keep the execution plaintiff under the shadow of losing his judgment and presenting his debtor with an irrebutable presumption of full payment in kind: *Sophia Wilkes B. & L. Assn. v. Rudloff,* 348 Pa. 477 (1944), 35 A. 2d 278; *McGrath Estate,* 159 Pa. Superior Ct. 78 (1946), 46 A. 2d 735.

We therefore decide that when the Sheriff's hammer fell on November 7, 1955, the "sale" occurred to the extent that the mortgagor's equity of redemption was cut off and the garnishee secured the interest and firm status of a successful bidder. The *St. Charles* and *Pennsylvania Company* cases decide no more. We fur-

ther decide that when the Sheriff's deed was delivered on January 13, 1956, the "sale" occurred to the extent that the six months' period within which it was the garnishee's duty to file a petition to fix fair value under the Act began to run.

Since the petition before us was in fact filed within that period, it was timely.

The judgment is reversed and is now entered, with costs, for the garnishee.

Mr. Justice BELL dissents.