## Aetna Casualty and Surety Co. v. Borough of Hamburg

*Stephen G. Welz,* for plaintiff.
*Stephen J. Gring,* for defendant.

SAYLOR, *J.,* June 24, 1982—After trial without a jury we found plaintiff's right to recovery was limited by section 8553(d) of the Political Subdivision

Tort Claim Act.[1] Plaintiff now seeks a new trial claiming we were in error.

The facts are not in dispute.[2] At issue is the interpretation of section 8553(d) which limits damages under the act. Subsection (d) reads:

(d) Insurance Benefits—If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

Plaintiff-insurance company was the automobile collision carrier for Dr. Charles M. Baney. On August 21, 1971, he was involved in an automobile accident with defendant's employee, Russell Hartman. The accident was caused solely by Hartman's negligence imputed to defendant, the Borough of Hamburg, under the doctrine of respondeat superior. The Baney vehicle was damaged in the amount of $3,958.69 of which $3,758.69 was paid by plaintiff in discharge of its obligation under the insurance policy. Dr. Baney was also paid $200 by defendant. However, the borough refused to pay plaintiff on its subrogation claim because of the limitation language on damages set forth in section 8553(d) of the Political Subdivision Tort Claim Act. The borough reasoned that since Baney received insurance benefits in the amount of $3,758.69 that amount is deducted from that which

1. Act of November 26, 1978 § 101 et seq., formerly 53 P.S. § 5311.101 et seq. (Supp. 1981) presently 42 Pa.C.S.A. § 8541 et seq.

2. The parties agreed to the facts by written stipulation filed March 9, 1981.

he otherwise would be entitled to recover and since Aetna is merely subrogated to Baney's rights, it is not entitled to any recovery. At trial we agreed and found for the borough.

In 1973, the Supreme Court of Pennsylvania abrogated the judicially created doctrine of Governmental Immunity in Ayala v. Philadelphia Board of Public Education.[3] Five years later the Pennsylvania General Assembly enacted the Political Subdivisions Tort Claim Act re-establishing the immunity of political subdivisions from suit with the exception of eight areas of activity.[4] It is conceded that Dr. Baney's claim falls within the exceptions to immunity under the act. What is in dispute is the limitation on damages recoverable.

Defendant, the Borough of Hamburg, argues that section 8553(d) prohibits application of the collateral source rule in claims for damages otherwise recoverable under the act. The collateral source rule which is generally followed in Pennsylvania prohibits a wrongdoer from claiming a credit against damages for monies received by an injured claimant from another source such as insurance proceeds. To put it another way, the victim of a tort under the rule is entitled to recover from his tortfeasor the full amount of his damages regardless of what he received from another source.[5]

Plaintiff, on the other hand, argues that the legislature did not intend a blanket prohibition of the collateral source rule. According to Aetna, the aim

---

3. 453 Pa. 584, 305 A. 2d 877 (1973).

4. See, 42 Pa.C.S.A. §8542(b) for the eight exceptions to immunity.

5. See, Feeley v. U.S., 337 Fed. 2d 924 (3rd Cir. 1964); Topelski v. Universal Southside Autos Inc., 407 Pa. 339, 180 A. 2d 414 (1962); Restatement of Torts 2d, §920(a) (1979).

of this language is to prohibit double recovery and there would be no such recovery here because plaintiff is seeking reimbursement against the Borough under the doctrine of subrogation. We conclude that we did not err and that plaintiff is permitted no recovery.

In Carroll v. County of York,[6] our Supreme Court, in finding the Political Subdivision Tort Claim Act constitutional, held that the legislature may grant constitutional immunity to political subdivisions. Likewise, it may permissibly limit liability as well as limit the amount recoverable against a political subdivision on the basis of a claimant's status.

Being satisfied that the act is constitutional and that limitations on recovery are permissible, we turn to the disputed language of the act. We find the wording of section 8553(d) to be clear and as such the Statutory Construction Act of 1972 requires that we not disregard the letter of the law under the pretext of pursuing its spirit.[7] Furthermore, even if the wording was not explicit, the parties have been unable to find any contemporaneous legislative history to section 8553(d) of the act. In this regard, our own research has also proven fruitless. We are bound then to construe the language according to common and approved usage and we are prohibited from reading into the language something that isn't there. We cannot presume the legislature intended something and then torture the language to fit our own notion of that intention.

Under the clear language of section 8553(d) of the act, the amount of insurance benefits paid to

---

6. 496 Pa. 363, 437 A. 2d 394 (1981).

7. See, 1 Pa.C.S.A. §1921; also, Commonwealth v. Duncan, 279 Pa. Superior Ct. 395, 421 A. 2d 257 (1980).

plaintiff's insured is to be deducted from the amount he would otherwise be entitled to recover in his claim asserted against the political subdivision. That being so, subrogation cannot now be used as a vehicle to accomplish indirectly that which is directly prohibited by statute. Subrogation is an equitable doctrine involving the right of legal substitution and is granted as a means of placing the ultimate burden of a claim on the one who in good conscience ought to pay it. It is generally applicable when one pays out of his own funds an obligation that is primarily payable from the funds of another.[8] Here, the political subdivision's liability for damages is statutorily limited and therefore it is not obligated to pay plaintiff's insured. Certainly, plaintiff's right under subrogation rises no higher than the right of its insured.

In In Re: McGrath's Estate,[9] a mortgagee, who failed to proceed under the Deficiency Judgment Act to fix the fair market value of real estate purchased at a foreclosure sale, was not entitled to subrogation against the mortgagor for delinquent taxes on the real estate paid out of the proceeds of sale. To do so, the court held, would permit the mortgagee to do by indirection that which the Deficiency Judgment Act directly forbids to be done. The court at 46 A. 2d 737 said:

Subrogation is an equitable doctrine and must depend upon inherent justice and some principle of equity jurisprudence, usually unjust enrichment. It cannot, therefore, be allowed where it would be contrary to public policy, or where it accomplishes by indirection that which a statute forbids to be

8. See, Dominski v. Garrett, 276 Pa. Superior Ct. 18, 419 A. 2d 73 (1980).

9. 159 Pa. Superior Ct. 78, 46 A. 2d 735 (1946).

done by direction. The rule is well stated in 60 C.J., Subrogation, §8: "... It will not be enforced unless there is some equitable doctrine upon which it can be predicated, and only when the applicant therefor has an equity to invoke and his cause is just and its enforcement is consonant with right and justice, and then only in a clear case. *It will not be allowed where it would be contrary to public policy, or where it would accomplish by indirection that which a statute forbids to be done by direction*. . . . (Emphasis supplied.)"

Perhaps the legislature only intended to prohibit double recovery. Perhaps that would be the fairer result. It is not our function, however, to engage in such speculation. The language is clear and we must apply it to the facts. If the legislature meant something different, it would have said so. We will not, and cannot, second guess the legislature.

For all these reasons we conclude that plaintiff's exceptions are without merit and its motion for a new trial must be denied.

## ORDER

June 24, 1982, based on the foregoing, plaintiff's exceptions to the amended decree and order of January 4, 1982, are dismissed and its motion for a new trial is denied.