657 A.2d 1261

**Anthony HORBAL, and John Horbal, Individuals for the Use and Benefit of Highland Financial Ltd., a Corporation, and James R. Walsh, an Individual**

**v.**

**MOXHAM NATIONAL BANK, a Corporation.**

**Appeal of HIGHLAND FINANCIAL LTD., and James R. Walsh, Esquire, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1994.

Filed April 10, 1995.

464

James R. Walsh, Johnstown, for appellants.

Jeffrey T. Morris, Pittsburgh, for appellees.

Before ROWLEY, P.J., and CAVANAUGH, WIEAND, CIRILLO, DEL SOLE, POPOVICH, JOHNSON, HUDOCK and SAYLOR, JJ.

JOHNSON, Judge.

We are asked to determine whether the Deficiency Judgment Act, originally the Act of July 16, 1941, P.L. 400, 12 P.S. § 2621.1 *et seq.*, reenacted as the Act of July 9, 1976, P.L. 586, No. 142, § 2, now 42 Pa.C.S. § 8103 *et seq.*, bars the redemption of a certificate of deposit (CD) by an assignee bank, where the assignment secured an antecedent indebtedness also secured by a mortgage upon real estate. We conclude that the Act has no application to the facts presented on this appeal. Moreover, we find that all conditions of the assignment were met and redemption of the CD was in full compliance with the "Uniform Commercial Code" (UCC) then in effect. Accordingly, we affirm the order which granted summary judgment in favor of the assignee bank.

In February 1988, Moxham National Bank (the Bank) loaned $120,000 to John and Anthony Horbal and Elaine Adams, co-partners t/a Potomac Associates II (collectively, the

debtors). The loan was secured by a mortgage executed that same day on real estate owned by the debtors. Two weeks later, the Horbals, in their individual capacities, assigned a $25,000 CD to the Bank. The assignment secured the "present and unconditional payment and performance when due" of "[a]ny and all indebtedness, obligations and liabilities of [the debtors] to the Bank, now or hereafter existing or arising, due or to become due." The Horbals also granted the Bank a power of attorney to withdraw all or part of the CD without notice to, or further consent of, the debtors. The assignment could be released only upon complete payment of the debtors' obligations or the mutual agreement of the Bank and the Horbals.

The debtors defaulted on the $120,000 loan obligation, and the Bank initiated foreclosure proceedings. The real property serving as security for the loan was sold by the sheriff and deeded to the Bank. One week later, on January 29, 1991, the Bank withdrew the CD and applied the proceeds totaling $26,437 to the remaining loan balance, which at that time was approximately $116,000.

Ten months later, the Horbals assigned to Highland Financial Limited and James R. Walsh (Use Plaintiffs) any rights or causes of action the Horbals might possess by virtue of the Bank's withdrawal of the CD and application of the proceeds to the loan balance. The Bank rejected the Use Plaintiffs' demands that it turn over the proceeds realized upon withdrawal of the CD, prompting the present litigation. Upon the closing of the pleadings, both sides filed motions seeking summary judgment. The trial court granted summary judgment in favor of the Bank, leading to this appeal.

Our Supreme Court has set forth the standard of review to be followed when reviewing an appeal from an order granting summary judgment as follows:

> Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving

party is entitled to a judgment as a matter of law." Pa. R.C.P. 1035(b). "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." Summary judgment may be entered only in those cases where the right is clear and free from doubt.

*Pennsylvania State University v. County of Centre*, 532 Pa. 142, 144–45, 615 A.2d 303, 304 (1992) (citation omitted); *accord Anderson v. Moore*, 437 Pa.Super. 642, 646–47, 650 A.2d 1090, 1092 (1994).

As in the trial court, the Use Plaintiffs argue to this Court that (1) the Bank was required to proceed under the Deficiency Judgment Act prior to withdrawing the CD proceeds; (2) collection of the $26,437 without proceeding under the Deficiency Judgment Act constituted the charging and collecting of a usurious rate of interest under 41 P.S. § 502; and (3) by virtue of the Bank's alleged violation of 41 P.S. § 502, it is liable for costs and attorneys' fees pursuant to 41 P.S. § 503.

■ First, the Use Plaintiffs assert that the Bank was required to proceed under the Deficiency Judgment Act prior to redeeming the CD. We disagree. We find no error in the trial court's rejection of the Use Plaintiffs' attempt to introduce Deficiency Judgment Act principles into the analysis of the Bank's right to withdraw the CD proceeds. Given the express terms of the assignment, that Act has no relevance to the Bank's action in proceeding on its unrelated secured interest. Because the merit of the second and third contentions depends upon the resolution of this first issue, we further conclude that they, too, are without merit.

In their Summary of Argument, the Use Plaintiffs contend that:

after the occurrence of a Sheriff Sale of the mortgaged premises at which the executing creditor is the purchaser, the executing creditor is precluded from taking any action against any additional collateral for the obligation to collect upon any alleged deficiency unless and until it seeks and

obtains a Deficiency Judgment under the "Deficiency Judgment Act."

Brief on Reargument of Appellants at 13–14. We reject this contention.

The Use Plaintiffs do not direct this Court to any language within the Deficiency Judgment Act which would expressly grant them the relief sought. We are mindful that, in ascertaining the intention of the General Assembly, we may presume that our legislature did not intend a result that is either absurd or unreasonable. 1 Pa.C.S. § 1922(1). We further are guided by the command that, when the words of a statute are clear and free from all ambiguity, the letter of the law is not to be disregarded under the pretext of pursuing its spirit. Since negotiation of bank certificates of deposit is not expressly covered by the Act, we first turn to the assignment itself under which the Bank secured its right to redeem the CD.

An examination of that assignment demonstrates that the debtors and their assignees have no valid complaint regarding the Bank's actions. The assignment provides, in material part, as follows:

### ASSIGNMENT OF DEPOSITS

The undersigned, Anthony Horbal and John Horbal (hereinafter called "Assignors"), for and in consideration of good and valuable considerations in hand paid, the receipt and sufficiency of all of which is hereby acknowledged, does hereby ASSIGN, TRANSFER and PLEDGE to the Moxham National Bank, a National banking corporation with its principal place of business at 550 Central Avenue, Johnstown, PA 15902, (hereinafter called "Bank"), all of Assignors' right, title and interest, on Certificate of Deposit Number 2005581, in the principal amount of Twenty Five thousand and 00/100 Dollars ($25,000.00), payable to the Assignors and issued by the Bank in January 27, 1988 and all sums now or at any time hereafter on deposit therein, and all sums due or to become due on account of said deposit and

any and all renewals, reissues or substitutions thereof, whether in respect of interest paid thereon, the value thereof, or otherwise together with interests of every kind of Assignors therein (all of which is hereafter called the "Account").

This Assignment and security interest is granted to the Bank to secure the prompt and unconditional payment and performance when due of the following (all of which is herein called the "Indebtedness").

Any and all indebtedness, obligations and liabilities of Potomac Associates II (hereinafter the "Debtors") to the Bank, now or hereafter existing or arising, due or to become due.

Assignors hereby constitutes and appoints the Bank their true and lawful attorney, with full power of substitution, (i) to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for any and all amounts which may be due or become due and payable under the Account, (ii) to execute any and all withdrawal receipts or other orders for the payment of money drawn on the Account, (iii) and/or to withdraw all or part of the Account without notice to or further consent by Assignors.

Upon the complete payment of the Indebtedness or upon the mutual agreement of the Assignors and the Bank, the Bank will release or partially release this Assignment.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;

If for any reason any of the Indebtedness is not paid on or before the maturity thereof, or if any representation or warranty of the Assignors or Debtors herein or in any other agreement now or hereafter executed in connection with or as security for any of the indebtedness or in any certificate at any time furnished in connection herewith or therewith, or if any financial statement of Assignors or Debtors shall prove to be incorrect in any material respect, or if Assignor or Debtors shall default in the performance of any covenant or other agreement of this Assignment or of any other agreement now or hereafter executed in connection with or

as security for any of the indebtedness, the Bank shall be entitled to receive or withdraw any or all funds in the Account.

The rights and remedies of the Bank under this Assignment and any other instrument or agreement executed in connection with or as security for any of the Indebtedness shall be cumulative, and the exercise or partial exercise of any such right or remedy shall not preclude the exercise of any right or remedy.

\* \* \* \* \* \*

WITNESS THE EXECUTION HEREOF, this 18th day of February, 1988.

ASSIGNORS:

s/ Anthony Horbal
Anthony Horbal

s/ John Horbal
John Horbal

By its express terms, the assignment transfers to the Bank all of the Horbals' right, title and interest in the CD, along with all sums due or to become due on account of the CD. The assignment grants full power to the Bank to collect and receive all amounts which may be due or become due and payable, along with the express power and right to withdraw all or part of the account without notice. The only restriction on the Bank's ability to act is that, upon complete payment of the indebtedness or upon mutual agreement, the Bank would release or partially release the assignment.

Initially, we note that at all times material to the transactions involved in this appeal, the effective statute was the "Uniform Commercial Code," Act of Nov. 1, 1979, P.L. 255, No. 86, § 1. All references in this Opinion are to that Code. The 1992 amendments to the Code are not pertinent to this appeal.

The CD, a type of negotiable instrument, 13 Pa.C.S. § 3104(b), meets all prerequisites to negotiability set forth in 13 Pa.C.S. § 3104(a). The CD was payable at an indefinite

time, 13 Pa.C.S. § 3109, and payable "to order," 13 Pa.C.S. § 3110(a). The negotiability of the CD was not affected by the separate mortgage agreement executed between the debtors and the Bank two weeks before assignment of the CD. 13 Pa.C.S. § 3119.

The debtors' transfer of the CD to the Bank vested in the Bank such rights as the debtors had therein. 13 Pa.C.S. § 3201(a). The Bank took the instrument for value, in good faith, and without notice that it was overdue, had been dishonored or was subject to any claim or defense against it. The Bank, therefore, became a holder in due course, 13 Pa.C.S. § 3302, and was free to transfer or negotiate the CD and to enforce payment in its own name. 13 Pa.C.S. § 3301. That section provides:

> The holder of an instrument whether or not he is the owner may transfer or negotiate it and, except as otherwise provided in section 3603 (relating to payment or satisfaction), discharge it or enforce payment in his own name.

13 Pa.C.S. § 3301 (main volume). As a holder in due course, the Bank took the CD free from all claims to it on the part of any person, including the debtors. 13 Pa.C.S. § 3305. As pointed out in the UCC Comment, following 13 Pa.C.S. § 3305, main volume:

> 2. The language "all claims to it on the part of any person" is substituted for "any defect of title of prior parties" in the original Section 57 in order to make it clear that *the holder in due course takes the instrument free not only from any claim of legal title but also from all liens, equities or claims of any other kind.*

(Emphasis added).

Because the CD is a negotiable instrument within the meaning of the UCC provision, and the Bank had an absolute right to enforce payment in its own name, we are unable to find any fault in the Bank's redemption of the CD on January 29, 1991. Any analysis under the Deficiency Judgment Act depends upon the CD's status as a "personal asset" of the debtors. Clearly, the CD was no longer a "personal asset" of

the debtors because the rights against the obligor/bank on the CD immediately vested in the creditor/bank upon execution of the assignment documents. 13 Pa.C.S. § 3301. Thus, the assignee bank was free to redeem the CD subject only to the terms contained within the assignment itself.

■ Accordingly, the theory upon which the Use Plaintiffs seek to proceed is without merit. The Deficiency Judgment Act simply is not implicated in proceedings involving the exercise of express rights to withdraw the proceeds of a CD upon default of an underlying obligation.

As the distinguished trial judge, the Honorable Thomas A. Swope, Jr., concluded:

> The Assignment is clear and unambiguous, when the loan went into default the Defendant became entitled to the C.D. It is of no moment that Defendant did not liquidate the C.D. until January 29, 1991, after having first pursued remedies under the Mortgage. Defendant's right to possession of the C.D. proceeds accrued on the date of the default, by operation of the contract, which predated the purchase of the real property at the Sheriff Sale. The right to the C.D. was independent and unrelated to the default judgment. Therefore the Act has no application to the Assignment.

Opinion, Swope, J., June 22, 1993, at 5.

Applying established contract law, the parties well could have provided for contingencies requiring other, additional action by the Bank prior to its exercise of the clear right to liquidate the CD that is contained in the agreement. They did not. When the economic realities of the transaction are considered, it is not surprising that the Bank sought, and obtained, additional security. When the debtors defaulted on the mortgage note, the Bank's act in liquidating the CD was predictable.

Because we conclude that the Deficiency Judgment Act has no application to the facts presented on this appeal, we affirm

the order granting summary judgment to Moxham National Bank.

Order of June 22, 1993 is **AFFIRMED.**

DEL SOLE, J., files a Dissenting Opinion in which WIEAND, HUDOCK and SAYLOR, JJ., join.

DEL SOLE, Judge, dissenting.

The question for consideration is not as stated by the Majority, but is whether a judgment creditor who, following execution on the judgment, purchases the debtor's real property at a sheriff's sale, has the right to liquidate a certificate of deposit assigned to it as collateral security on the underlying debt without complying with the Deficiency Judgment Act, 42 Pa.C.S.A. § 8103 *et seq.* Since I conclude that a judgment creditor, who purchases the debtor's real property at an execution sale on the judgment and fails to establish a deficiency as required by the statute, cannot seek further collection on the underlying debt, I must dissent.

In my view, the result reached by the Majority ignores the Deficiency Judgment Act and subjects debtors to repeated efforts by judgment creditors to collect a judgment without determining if there was a satisfaction of the indebtedness by the creditor's purchase of the debtor's property. Unfortunately in focusing on the Assignment of Deposits Instrument, the Majority does not discuss the requirement that in order to invoke redemption there must be an existing "indebtedness." This record contains no indication of the fair market value of the sheriff's sale property and, since there was no attempt to fix that value within six months of the sale, the Act operates to satisfy the debt.

Appellants, Highland Financial and Mr. Walsh, filed a complaint seeking recovery of the proceeds from a certificate of deposit, treble damages and counsel fees. Moxham National Bank, the Appellee, filed preliminary objections which were denied in part and granted to the extent that a claim for punitive damages was dismissed. The parties then filed Motions for Summary Judgment. The trial court denied Appel-

lants' Motion and granted Appellee's motion. Appellants filed this timely appeal.

On appeal, an entry of an order of summary judgment by a trial court will not be disturbed unless there has been an error of law. *Today's Express, Inc. v. Barkan*, 426 Pa.Super. 48, 626 A.2d 187 (1993). The Superior Court will affirm a grant of summary judgment only where, pleadings, depositions, inter-rogatory answers, and admissions on file, with affidavits, if any, show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.* When determining whether summary judgment was properly granted, we will examine the record in the light most favorable to the non-moving party. *Id.*

On February 4, 1988, Moxham National Bank loaned $120,-000.00 to John Horbal, Anthony Horbal and Elaine Adams, d/b/a Potomac Associates II (the debtors), which was secured by a mortgage executed the same day on the debtors' proper-ty and evidenced by a note. As additional security for the loan an instrument entitled "Assignment of Deposits" was executed. Therein Moxham was assigned all "right, title and interest" in a certificate of deposit (CD), in the principal amount of $25,000.00 to secure the payment of "any and all indebtedness" owed to Moxham by Potomac Associates.

In 1989, the debtors defaulted on the loan. Moxham com-menced a mortgage foreclosure action alleging that the amount due on the loan was $130,946.83, which included a principal amount of $116,670.90, plus interest and attorney fees. Moxham obtained a default judgment for that amount and executed on the real property of the debtors. At the sheriff's sale, Moxham purchased the debtor's property for $666.40. The deed was delivered to Moxham and recorded on January 21, 1991.

On January 29, 1991, shortly after delivery of the sheriff's deed, Moxham liquidated the certificate of deposit. It applied these proceeds to the amount it claimed was still owed by the debtors. Later that same year debtors assigned any causes of action arising from Moxham's withdrawal of the CD to Appel-

lants, Highland Financial Services, Ltd. and James R. Walsh. Appellants subsequently made demands to Moxham to return the proceeds of the CD, which it refused. This refusal prompted Appellants to commence the underlying action to recover the proceeds of the CD, counsel fees and treble damages. The complaint was premised on the principle that Moxham failed to comply with the provisions of the Deficiency Judgment Act, 42 Pa.C.S.A. § 8103(a) thereby making Moxham's retention of the CD proceeds, wrongful. Thereafter, Moxham filed a Motion for Summary Judgment which was granted by the court, and affirmed by the Majority, accepting Moxham's position that the Act did not apply because the Assignment arose as a separate contract, entirely distinct from the Mortgage. My reading of the Assignment instrument, the Deficiency Judgment Act and relevant case law, prompts me to reach a different conclusion.

In this appeal, Appellants argue that Moxham was required to comply with the Deficiency Judgment Act prior to liquidating the certificate of deposit. Critical to a resolution of Appellants' claim is an examination of the terms of the instrument entitled, "Assignment of Deposits."

The Assignment recites that Moxham (the Bank) is to be assigned all "right title and interest" on a certificate of deposit, in the principal amount of $25,000.00. It provides that the assignment and security interest is granted to the Bank to secure the prompt payment of the "Indebtedness." That term is defined in the document as:

> Any and all indebtedness, obligations and liabilities of Potomac Associates II (hereinafter the "Debtors") to the Bank, now or hereafter existing or arising, due or to become due.

The Bank was also given power of attorney and the power to withdraw from the account without notice or consent from the debtors. In the event of any default for any indebtedness, the Bank was entitled under the terms of the Assignment, to receive or withdraw any or all funds in the account. The instrument also provides the following regarding release of the Assignment:

> Upon the complete payment of the Indebtedness or upon the mutual agreement of the Assignors and the Bank, the Bank will release or partially release this Assignment.

Thus, according to the terms of the Assignment instrument, Moxham's rights to the CD were created to ensure payment of the "Indebtedness" and continued until the "Indebtedness" was extinguished, or the parties agreed otherwise.

Appellants argue that the "Indebtedness," the loan obligation of $120,000.00, no longer existed at the time Moxham liquidated the CD, because that loan was deemed to have been satisfied. This occurred as a result of the fact that Moxham purchased the realty at the Sheriff's sale and did not, within six months after the sale, seek to establish a deficiency under the Deficiency Judgment Act. Moxham responds to this argument by asserting that Assignment, which transferred to it all "rights, title and interest" in the asset, was a separate agreement from that upon which the underlying judgment and execution sale was based. Moxham also contends that the assignment was not type of *in personam* judgment or claim covered in the Act. Alternatively Moxham argues that its liquidation of the CD was proper since it occurred within six months of the sale and receipt of the deed, which was within the time allowed before a deficiency need be established.

The express terms of the Assignment agreement cause me to conclude that the Assignment does not stand alone, and that the provisions of the Deficiency Judgment Act must govern the actions taken in this case. The Assignment granting Moxham all rights to the CD was designed to continue indefinitely absent a mutual agreement or release, which are not at issue here, or until "complete payment of the Indebtedness." The term "Indebtedness" included all obligations and liabilities due Moxham, which necessarily concerned the $120,000.00 loan. The facts indicate that a default on the loan prompted Moxham to purchase at a sheriff sale, the property which was offered as security for the loan. Moxham did not take action prior to that sale to enforce its security interest in the CD, to liquidate it, and apply those proceeds to the outstanding debt.

Whether the property alone had a value in excess of the amount due Moxham, or whether it was insufficient to cover the indebtedness and thus a deficiency existed, was not determined prior to Moxham's actions with regard to the CD. Under the terms of the Assignment instrument, only if an indebtedness continued to exist was the assignment of all rights to the CD valid. Therefore, while the Assignment can be seen as a separate and distinct agreement, the terms of the agreement made it necessary to determine whether the "Indebtedness" was extinguished by Moxham's receipt of the property in the sale. To be entitled to the proceeds of the CD, Moxham had to establish that a debt existed.

Where a creditor takes the position that the receipt of the debtor's real property at a sheriff's sale is insufficient to satisfy the amount of the judgment, the Deficiency Judgment Act directs what actions should be taken to obtain satisfaction. *First National Consumer Discount Company v. Fetherman*, 515 Pa. 85, 527 A.2d 100 (1987). The Act governs situations where real property is sold to a judgment creditor and it must be determined whether the fair market value of the property is sufficient to satisfy the debt. It provides as a general rule:

Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court having jurisdiction to fix the fair market value of the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.

42 Pa.C.S.A. § 8103(a)

In this case it is undisputed that Moxham was the judgment creditor in the execution proceeding. Further, it is Moxham's position that the property it received was insufficient to satisfy the amount of the judgment. However, Moxham never filed a petition to fix the fair market value of the property. The legal

result of this inaction is set forth in the statute, which provides:

> If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor. . . . may file a petition, . . . setting forth the fact of the sale, and that no petition has been filed within the time limited by statute after the sale to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S.A. § 8103(d).

These provisions of the Act have been interpreted to create "an irrebuttable presumption" that a creditor has been paid in full where that creditor has failed to file a petition to fix the fair market value of the real estate sold within six months after the sale. *Fetherman,* 515 Pa. at 93, 527 A.2d 100, citing *Valley Trust Co. of Palmyra v. Lapitsky,* 339 Pa.Super. 177, 488 A.2d 608, 610 (1985), quoting *McGrath Estate,* 159 Pa.Super. 78, 80, 46 A.2d 735, 736 (1946). The *Fetherman* court stated:

> We hold that where a judgment creditor purchases the debtor's real estate at a sheriff's sale and then fails to petition to fix the fair market value of that real estate within the statutory time limitation, the judgment creditor is deemed to have received full satisfaction in kind of the underlying debt obligation.

> •　　•　　•　　•　　•

> In this case the appellee judgment creditor purchased the Fetherman's real estate at the sheriff's sale. The appellee did not bring a petition to fix the fair market value of the real estate within six months after the sheriff's sale. Thus, the appellee is deemed to have been satisfied in full in kind and will not be heard to say it did not receive full satisfaction.

*Fetherman*, 515 Pa. at 97, 527 A.2d at 105.

The rationale for the creation of this statutory presumption was also detailed in *Fetherman:*

> [T]he Deficiency Judgment Act, . . . was enacted to remedy an inequity resulting to judgment debtors when the judgment creditor bought the debtor's property at a forced sale. Prior to adoption of the Act, a judgment creditor could purchase, at sheriff's sale, valuable real estate of the debtor for a nominal sum, (i.e. costs and taxes), and yet retain the full amount of his judgment. The debtor was to be credited only for the actual sum realized at the sale. Under the Deficiency Judgment Act, the creditor's judgment is to be reduced by the fair market value of the property bought by the creditor rather than by the sale price. If no petition to fix the fair market value of the property is timely brought by the creditor, the judgment in favor of the creditor is satisfied, released and discharged as a matter of law.

*Id.*, 515 Pa. at 96, 527 A.2d at 105. (citations and footnote omitted.)

In the instant case Moxham, as the creditor, purchased the debtors' property at a sheriff's sale, and believing that the debtors' debt had not been satisfied by that action, it sought and obtained the proceeds of the certificate of deposit. The fault with Moxham's actions lies in the fact that it was unknown at the time whether or not the receipt of the mortgaged property at the sheriff's sale was sufficient to satisfy the debtors' debt. Because an "Indebtedness" remained only if the fair market value of the property was insufficient to cover the amount of the debt, Moxham was not free to seize additional collateral in an attempt to cover an undetermined loss. Moxham had no right or power regarding the CD, absent an existing indebtedness.

The Deficiency Judgment Act was designed to prevent the action taken by Moxham in this case. The Act provides the means whereby a creditor can seek to obtain the debtor's other property in order to receive full satisfaction of the debt when the initial receipt of real property through a sheriff's

sale is insufficient. The Act's pronouncement that a judgment creditor is deemed to have received full satisfaction if the provisions in the Act for establishing a deficiency are not followed, ensures that debtors are protected from the seizure of their property even after their debt has been extinguished. Even if the parties agreed to the value of the real estate sold at the sheriff's sale, it was still necessary for Moxham to formally utilize the procedures outlined in the Act to obtain a finding in an appropriate court proceeding of the property's fair market value. See *Auerbach v. Corn Exchange National Bank & Trust Co.*, 148 F.2d 709, 712 (3rd Cir.1945). Because such action was not undertaken by Moxham, an irrebuttable presumption was created that it, as the creditor and mortgagee in the underlying foreclosure, was paid in full, in kind.

As an alternative argument, Moxham asserts that at the time it liquidated the CD, it could not have been presumed to have had its debt satisfied because a six month period for filing a petition under the Act had not passed. It contends that under the terms of the Act it had six months after the sale of the property in which to file a petition for a deficiency judgment. Because it took action against the CD within one month of obtaining its deed from the sheriff's sale, Moxham claims it acted properly.

This argument must also be dismissed. While it is true that a judgment creditor may petition the court within six months to fix the fair market value of the property sold and establish a deficiency, it is necessary for the creditor to file a petition before it seeks to recover additional property as satisfaction. While a proceeding must be commenced within six months or it will be barred, 42 Pa.C.S.A. § 5522(b)(2), and the presumption that the judgment creditor has been satisfied will apply, it is nevertheless necessary to first file a petition before proceeding to seize other property in order to obtain satisfaction. The Act requires that a petition be filed. Moxham, as a creditor, did not file a petition within the six month limitation period, and, therefore, it could not proceed against the CD. Because of this inaction, the presumption arose and the debt-

ors became entitled, upon petition, under 42 Pa.C.S.A. § 8103(d) to have the judgment marked, "satisfied".

In *Com. Bank and Trust Co. v. Hemsley*, 395 Pa.Super. 447, 577 A.2d 627 (1990), as security for a mortgage loan, three parcels of property were pledged. The Bank obtained a judgment in mortgage foreclosure and bought a parcel at sheriff's sale. When it failed to file a deficiency petition within six months of the sale of the first parcel of secured property, the court ruled that an irrebuttable presumption was created that it had been paid in full. The court cited to *Valley Trust Company of Palmyra v. Lapitsky*, 339 Pa.Super. 177, 488 A.2d 608 (1985), where a bank sought to foreclose on each of three separate properties which it held to secure an indebtedness. After it executed on two of the properties, the bank sought to execute on the third. A motion was filed by the debtors to stay the sheriff's sale on the third, arguing that the creditor failed to comply with the provisions of the Deficiency Judgment Act. The court held that it is best, for the protection of the debtor, to mandate compliance with the Act after the first parcel is sold. Because a petition was not filed within six months of the first sale, the court ordered the execution to be stricken. In so ruling, the court rejected the claim made by Moxham that *First Pennsylvania Bank N.A. v. Lancaster County Tax Claim Bureau*, 504 Pa. 179, 470 A.2d 938 (1983) compelled a different result. The language cited by Moxham was found to be of "little precedential value" because it did not command a clear majority of the votes on that issue. *Lapitsky*, 339 Pa.Super. at 183, 488 A.2d 608. Further, when focusing on the purpose of the Act, to protect the debtor by having a determination made as to the fair market value of the realty, the court concluded that the "better result" is to require the Act to be followed. *Id.* Moxham's failure to follow the provisions of the Act in seeking to receive full satisfaction for the "Indebtedness" caused an irrebuttable presumption to arise that the "Indebtedness" no longer existed and that Moxham had been paid in full. Accordingly, because no amount was due and owing to Moxham, it had no right to obtain the proceeds of the CD. The trial court's

decision awarding Moxham summary judgment, based upon the conclusion that the liquidation was proper, should, in my judgment, be reversed.  As a result, I dissent.

WIEAND, HUDOCK and SAYLOR, JJ. join.