William VALORA, Jr., As Parent and Natural Guardian of Benjamin VALORA, and William Valora, Jr., in His Own Right

v.

PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND (PEBTF), Appellant.

Superior Court of Pennsylvania.

Argued Oct. 21, 2003.

Filed March 22, 2004.

Reargument Denied May 24, 2004.

Richard Krischner, Washington, DC, for appellant.

Richard C. Angino, Harrisburg, for appellee.

BEFORE: JOHNSON, MONTEMURO * and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 Pennsylvania Employees Benefit Trust Fund (PEBTF) appeals from the January 3, 2003 Order denying its exceptions to and making final the Order docketed January 17, 2002 enjoining it from terminating and/or continuing the termination of benefits provided to appellee, William Valora, Jr., under the Retired Employees Healthcare Plan (REHP).

¶ 2 Succinctly, appellee's infant son, born with severe congenital hydrocephalus, received a sealed financial settlement to which appellant, that insured infant at that time, argues it is entitled to subrogation of $210,633. Appellant PEBTF is not an insurance company but administers the health plan provided to active and retired Pennsylvania State Troopers and their beneficiaries through Capitol Blue Cross and Pennsylvania Blue Shield. Upon review of a stipulated record, the trial court found that while appellant may have been entitled to subrogation, it waived that right by failing to raise that claim until after the case had settled.

> [Appellant's] first notice of its subrogation rights came approximately 3½ years after the suit; a little more than one year after the trial; ten months after settlement had occurred; and approximately six months after the Court approved and sealed the settlement. Although the length of time does not shock us, we believe that the totality of the circumstances surrounding the duration of time does not equate to the [appellant] exercising reasonable diligence in presenting its subrogation claim.

Trial Court Opinion, Cherry, J., 1/18/02, at 7. The underlying facts of this case, as thoroughly set forth by the trial court, follow.

The Plaintiff in this case, William Valora, Jr., the parent and natural guardian of Benjamin Valora, is a retired Pennsylvania State Police Trooper, having retired from service to the Commonwealth on April 12, 1991. Mr. Valora was covered by, and subject to, the Collective Bargaining Agreement between the Commonwealth of Pennsylvania and the Fraternal Order of Police upon his retirement. Mr. Valora was and is also subject to the Pennsylvania State Police Handbook and the provisions therein.

The Defendant is responsible for administering the health plan for retired Pennsylvania State Police Troopers, including Mr. Valora. Capital Blue Cross and Pennsylvania Blue Shield provide the health benefits to State Police retirees and their dependents.

On April 2, 1993, Benjamin Valora was born and became a dependent under Mr. Valora's health benefit plan. Benjamin was born with severe congenital hydrocephalus, which is "an abnormal accumulation of fluid in the cerebral ventricles result[ing] in enlargement of the skull and compression of the brain." WEBSTER'S II NEW COLLEGE DICTIONARY 541 (1st ed.1995). As a result, Benjamin is severely and profoundly mentally retarded and physically handicapped. Benjamin has no hope of any semblance of recovery and will never be able to tend to his own needs or care for himself in any way for the rest of his life.

As a result of Benjamin's prenatal care, a medical malpractice lawsuit and complaint were filed in March of 1995. *See Benjamin Valora, et al. v. Hershey Medical Center, et al.*, No. 1057–S–1995. The case proceeded through litigation

* Retired Justice assigned to Superior Court.

and finally went to trial before Judge Joseph H. Kleinfelter of this Court on August 18, 1997. Thereafter, each party filed motions for post trial relief in September 1997. Judge Kleinfelter granted a new trial in October, 1997. Ultimately, the parties reached a settlement agreement in December, 1997.

Because Plaintiff in the case was a minor, the settlement required approval of the Court. Thus, Plaintiffs filed a Petition for Approval and later, an Amended Petition for Approval. Judge Kleinfelter eventually approved the settlement by Order on April 17, 1998 and said Order was sealed. The settlement required, *inter alia*, a release to be signed by Benjamin's parents. The release outlined the structured settlement agreement, which included the purchase of an annuity for the benefit of Benjamin. In furtherance of the settlement agreement, a Special Needs Trust was established for Benjamin's benefit, with Sentry Trust Company appointed as Trustee. The settlement provided for monthly as well as lump-sum payments over the course of Benjamin's life. The settlement did not specify an amount for past or future medical expenses.

Upon learning of the settlement between Valora and Hershey Medical, a representative of the Defendant contacted Plaintiff's counsel via letter on October 2, 1998 concerning a subrogation claim to the settlement amount. The parties exchanged correspondence between November 27, 1998 and September 21, 2000, regarding Defendant's subrogation rights. Initially, Plaintiff was not cooperative or responsive toward the Defendant as to the inquiries regarding the supposed subrogation claim, which was for two hundred ten thousand, six hundred and thirty three dollars ($210,-633). In response to its perceived lack of cooperation on the part of the Plain-

tiff, Defendant threatened to and did in fact terminate Plaintiff's healthcare coverage through the REHP.[1]

In response, Plaintiff filed a Complaint In Action (Equity) to Enjoin Termination Of Healthcare Benefits. Defendant filed an Answer, New Matter, and Counterclaims against William Valora in both Equity and in Assumpsit. This Court entertained argument on the matter. Plaintiff submitted a legal memorandum on the subrogation interest of the Defendant. Both parties stipulated to various facts of this case.

1. We would like to note that Defendant's counsel, Richard Kirschner, Esquire, informed this Court via a letter dated January 23, 2001, that "Mr. Valora's benefits were immediately and prospectively reinstated and remain so at this time." We have no reason to believe that Defendant has, at any time since the date of the representative letter, done anything to change the status of Mr. Valora's benefits; that being the reinstatement of said benefits.

*Id.*, at 1–3. The court ultimately found in favor of appellee.

¶ 3 Appellant argues the trial court erred when it concluded its failure to act with reasonable diligence caused waiver of any subrogation claim that may have existed. Appellant also contends that by commencing and settling a lawsuit without notice, appellee breached his contractual agreement to take no action that would prejudice appellant's right to subrogation. Appellant argues, contrary to the trial court's suggestion, that its failure to "remind" appellee of its subrogation interest should not result in waiver of that contractual right and, given the fact that the release signed by appellee required him to "satisfy any and all liens that have been asserted and/or may be asserted for reim-

bursement of medical benefits," it is apparent appellee was aware of his obligation to reimburse medical providers. Appellant's brief at 14. Appellant also argues the trial court's reliance on workers' compensation cases for the principle appellant waived its right to subrogation is misplaced, as in those cases and unlike here, employers and their insurers are automatically notified of pending suits. Lastly, appellee should be precluded from prevailing given the fact he came into court with "unclean hands"; that is to say, he was represented by counsel who knew or should have known that subrogation is a standard provision in any health insurance arrangement. *Id.*, at 15.

¶ 4 While at first blush appellant's attempt to distinguish workers' compensation claims with regard to "notice provided," and his argument alleging appellee's contractual duty to protect its subrogation rights, appear convincing, a recent Commonwealth Court case wherein a third party insurer sought unsuccessfully to assert its subrogation rights against a workers' compensation award dispels the logic of those arguments. In *Independence Blue Cross v. Workers' Compensation Appeal Board*, 820 A.2d 868 (Pa.Cmwlth.2003), the Court found appellant's failure to assert with reasonable diligence its contractual claim for subrogation against a settlement award about which it had no notice resulted in waiver. Such is the situation before us.

¶ 5 In *Independence*, an employee was injured, her employer denied her claim, and she filed a claim petition. In the meantime, claimant submitted her medical bills to her health care insurer, Independence, and it satisfied the amounts owed. Employee's claim was granted, the employer appealed, and Independence continued to pay claimant's bills during this time period. While the appeal was pending,

employee and employer entered a compromise and settlement agreement in July, 1998. No mention was made of Independence. Fourteen months later, Independence sought to enforce its subrogation rights. Both parties argued that the right to subrogation had been waived as a result of Independence failing to put either employee or employer on notice of its claim. The workers' compensation judge agreed, as did Commonwealth Court.

> Before us, [Independence] contests that it waived its subrogation interest by failing to present it at the time of the claim petition. [Independence] notes it was not a party to the claim petition and did not receive notice of the proceedings. [Independence] asserts an absolute statutory right to subrogation ... which cannot be defeated by equitable considerations, such as lack of due diligence.

*Id.* at 871. The Commonwealth Court found insurer's argument unpersuasive, as do we.

¶ 6 Appellant here was in the same position as Independence with regard to the settlement agreement. Appellant herein had been paying not insignificant benefits for the child for more than five years before it exercised what would be considered due diligence and investigated the possibility of a subrogation interest. Appellee did nothing to hide the fact he had filed a law suit or was negotiating a settlement, and nothing in the contract between the parties, drafted by appellant, placed an affirmative duty on appellee to notify appellant of such actions. We do not question whether appellant had a right to subrogation under the terms of the insurance contract, the question is whether it acted with reasonable diligence in exploring that right in appellant's case. *See Independence, supra; Boeing Helicopters v. WCAB (Cobb)*, 713 A.2d 1181 (Pa.Cmwlth.

1998). The trial court found, and we agree,

> [t]he [appellant] should have known of the likelihood or at least the possibility that legal action was likely to take place in a case such as this. It seems reasonable to this Court that the [appellant] can easily send out a notice to clients as a reminder that subrogation rights may exist. Such a reminder could be placed in one of the many notices that a company normally sends to its clients. Certainly it appears more reasonable for a party such as the [appellant], to send a simple reminder *or to explore their rights,* than it is for a party such as the [appellee], in the midst of caring for a severely retarded child and bearing the duties of a medical malpractice litigation, to remind a company of that entity's own rights.

Trial Court Opinion at 7–8 (emphasis added). Appellant, as an administrator of several health plans, routinely deals with subrogation claims, more often than not claims much less significant dollar-wise than the one before us. It is only logical that its employees and/or counsel would investigate possible subrogation claims as a matter of course, especially when its records show, as here, inordinately large payments over an extended period of time.

¶ 7 We agree with the trial court that appellant's failure to exercise due diligence in asserting its undeniable right to subrogation has resulted in waiver of that right. We likewise find appellant's arguments to the contrary devoid of merit.

¶ 8 Order affirmed.