Glenna J. BRADDOCK

v.

Jennifer F. OHNMEISS

v.

Pennsylvania Employees Benefit Trust Fund (PEBTF), Appellant.

Superior Court of Pennsylvania.

Submitted Sept. 20, 2004.

Filed Jan. 4, 2005.

Reargument Denied Feb. 28, 2005.

Richard Kirschner, Washington, D.C., for appellant.

David Lutz, Harrisburg, for Braddock.

BEFORE: HUDOCK, KLEIN, JJ. and McEWEN, P.J.E.

OPINION BY KLEIN, J.

■ ¶ 1 Pennsylvania Employees Benefit Trust Fund (PEBTF)[1] appeals from the trial court's order denying post-trial motions and making final its order denying PEBTF's request to intervene to enforce subrogation rights to proceeds from the settlement of an automobile accident claim.[2] Although our decision is based on different grounds, we affirm the trial court's order denying relief.[3]

¶ 2 Glenna Braddock, a participant in a health care plan provided by the PEBTF, was involved in a motor vehicle accident on October 25, 1996. After exhausting benefits from Erie Insurance, Braddock re-

---

1. PEBTF began to function as a government plan in 1988; it operated as a health and welfare trust plan and was originated to provide health benefits to employees of the Commonwealth. It serviced only the Commonwealth of Pennsylvania and related agencies.

2. Since the underlying claim has been settled, this order disposed of all claims and all parties. *See* Pa.R.A.P. 341(b)(1).

3. Questions of intervention are addressed to the sound discretion of the trial court. *Allegheny Anesthesiology Associates v. Allegheny General Hospital,* 826 A.2d 886, 894–95 (Pa.Super.2003).

ceived first party benefits from PEBTF between October 1999 and December 2000.

¶ 3 Braddock filed suit in 1998; Braddock and the tortfeasor settled their lawsuit on March 7, 2000. Prior to signing the settlement agreement, however, Braddock inquired whether PEBTF [4] had a lien against her for the payments made to her. On February 25, 2000, Braddock's counsel received a letter from PEBTF stating that at that time it had no lien to assert against Braddock. (Letter from Cindy L. Bupp, 2/25/00, R.R. 57a). Moreover, in the Summary of the Plan Description distributed by PEBTF, effective in October 1998, the language with reference to subrogation to other plans specifically states:

Benefits From Other Plans (Subrogation)

If you or any of your enrolled dependent(s) receive benefits under the PEBTF for injuries caused by someone's negligence, the PEBTF has the right to seek from the responsible party, repayment in full for such benefits. This right of subrogation does not apply to any payments the PEBTF makes as a result of injuries to you or your dependent(s) sustained in a motor vehicle accident.

(PEBTF Summary Plan Description, R.R. 27a) (emphasis added).

· ¶ 4 Nine months after the settlement, on December 29, 2000, PEBTF contacted Braddock's counsel and claimed a potential subrogation interest. In its petition to intervene, PEBTF alleged that it had paid medical, hospital and related benefits coverage to or on behalf of Braddock in excess of $5,391.38. PEBTF asserted that *at*

*the time of the accident* it was an ERISA plan and thus fully entitled to exercise its subrogation rights. *See FMC Corporation v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). At this point, the case had been settled and the proceeds had been distributed.

¶ 5 The trial court determined that PEBTF was entitled to assert a subrogation interest only if PEBTF was a qualified ERISA plan on October 25, 1996, the date of the motor vehicle accident. The court held an evidentiary hearing, concluded that PEBTF was unable to prove that it in fact was ERISA-qualified at the time of the accident, and denied PEBTF's petition to intervene. PEBTF filed post-trial motions, which were denied. This appeal followed.

■ ¶ 6 PEBTF not only failed to assert a claim for subrogation between October 1999 and December 2000 (when benefits were paid), but it specifically denied a claim of subrogation in its manual and in its response to Braddock's counsel's letter just prior to settlement. Consequently, PEBTF failed to act with reasonable or due diligence and thus waived any subrogation claim it might have had. It is for this reason we affirm the trial court's order denying relief.[5]

¶ 7 This result is compelled by *Valora v. PEBTF*, 847 A.2d 681 (Pa.Super.2004). There, PEBTF asserted its claim 3½ years after suit was filed and ten months after settlement had occurred. *Id.* at 681. This Court held that the administrator of the health plan waived its subrogation interest by failing to act with reasonable diligence

---

4. On March 1, 1994, PEBTF allowed private employers to provide PEBTF benefits to their employees; thus, PEBTF received private employer contributions and held ERISA (Employee Retirement Income Security Act) status. The trial court found that from 1994 to January 1998, PEBTF believed it held ERISA status; however, by January 1998, the number of private employer contributions decreased.

5. A trial court order can be affirmed as long as it is correct on any legal ground or theory regardless of the reason relied upon by the trial court. *Shearer v. Naftzinger*, 560 Pa. 634, 747 A.2d 859, 861 (2000).

before raising its subrogation claim. *Id.* at 684. Judge Tamilia, who authored the unanimous panel decision, stated:

> Appellant, as an administrator of several health plans, routinely deals with subrogation claims, more often than not claims much less significant dollar-wise than the one before us. It is only logical that its employees and/or counsel would investigate possible subrogation claims as a matter of course, especially when its record show, as here, inordinately large payments over an extended period of time.

*Id.* at 685. The panel relied upon the decision in *Independence Blue Cross v. Workers' Compensation Appeal Board,* 820 A.2d 868 (Pa.Cmwlth.2003). That case held that Independence had waived its subrogation claim when it failed to put either employee (for whom it had satisfied medical claims) or employer (who had had denied employee's workers' compensation claim) on notice until fourteen months after employer and employee had settled the claim. *Id.* at 871.

¶ 8 In the case before us, not only did PEBTF fail to assert its subrogation claim with reasonable diligence, but it affirmatively stated in both its current brochure and in a letter from its representative that it did not have a subrogation claim. Practically, when deciding whether to accept a settlement offer, the client's primary concern is how much he or she will wind up with after any subrogation claims and counsel fees. Sometimes it is better to even turn down an offer of policy limits and go to trial rather than accept a settlement that will primarily go to subrogation claims and an attorney. Here, as in *Valora,* waiting two and one-half years after

suit and nine months until after the proceeds are distributed is too late.

¶ 9 Under section 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1720, there is generally no subrogation for medical benefits paid which involve an automobile accident.[6] However, if PEBTF were considered a plan subject to ERISA, or ERISA-qualified, ERISA trumps the state statute and there *would* be subrogation, despite the MVFRL. *See* 29 U.S.C. §§ 1001–1003; *see also FMC Corp.,* 498 U.S. at 61–62, 111 S.Ct. 403 (holding ERISA preempted application of Pennsylvania Motor Vehicle Financial Responsibility Law to self-funded health care plan, which precluded reimbursement from claimant's tort recovery for benefit payments by a program, group contract or other arrangement, to employer's self-funded health care plan).

¶ 10 PEBTF admits it was *not* subject to ERISA except for a period from March 1994 until October 1998, when it changed its subrogation language to exempt proceeds from automobile accident cases. Therefore, PEBTF was not able to claim subrogation for the time the payments were made, since that time was well after its ERISA qualification ended under any scenario. PEBTF's claim is that the critical time is the *date of the accident,* which was in 1996. The trial court, as noted above, determined that PEBTF had failed to establish that it in fact was ERISA-qualified at the time of the accident. However, because we affirm on grounds that PEBTF waived its subrogation rights, we need not decide whether it was appropriate to utilize the date of the accident as the relevant time or whether the court proper-

---

6. Section 1720 of states that "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to ... benefits ... payable under section 1719." Section 1719 refers to benefit payments by "[a]ny program, group contract or other arrangement." 75 Pa.C.S. § 1719.

ly determined that PEBTF had failed to meet its burden of proof.[7] We add, however, that the law on this issue is currently in a state of flux, and it is thus critical that PEBTF inform its members when it is claiming subrogation and when it is not. In this case, not only did it not make a claim, but in all its recent communications with Braddock PEBTF indicated that it was *not* claiming subrogation. This is the antithesis of due diligence in pursuing subrogation rights, and therefore we conclude that subrogation rights were waived. *Valora, supra.*

¶ 11 Affirmed.

---

7. Moreover, it is not resolved whether PEBTF was *ever* an ERISA-qualified plan entitled to subrogation. PEBTF started as a governmental plan, and as such was not subject to ERISA. *See Haney v. Commonwealth of Pennsylvania Treasurer's Office,* 1992 WL 209265, 1992 U.S. Dis. LEXIS 12637 (1992); *see also* 29 U.S.C. § 1003(b)(1). It was only in March, 1984 that PEBTF extended its plan coverage to some non-governmental employees and started filing forms with ERISA when it got a non-committal answer as to whether or not it was covered. The issue was whether the number of non-governmental employees was *de minimus* or not, a question not answered by ERISA. Approximately 1,000 of the 85,000 plan members were non-governmental. In a recent decision, *Scalice v. PEBTF,* 854 A.2d 987 (Pa.Super.2004), this Court determined that PEBTF was entitled to subrogation rights against payment to employee by third party's insurer for medical expenses arising from an accident, although PEBTF made some payments to employee after it had lost its subrogation rights under ERISA, where PEBTF was ERISA-qualified *at time of accident.* Judge Ford Elliott dissented, agreeing with the reasoning of *Triplett v. United Behavioral Health Systems, Inc.,* 1999 WL 238944 (E.D.Pa.1999) (memorandum),which concluded that if a plan is created as a governmental plan (and thus exempt from ERISA), it remains a governmental plan

so long as the governmental unit that created it does not abandon it. 854 A.2d at 993–994. The majority reasoned that if the plan's ERISA status is determined at the time of injury, unintended manipulations could be avoided, such as holding bills for payment until classification as ERISA-qualified.

We note that the trial judge in the instant case did not accept the theory that merely accepting the PEBTF filings was sufficient to say that the Department of Labor agreed that PEBTF was an ERISA plan, particularly when ERISA did not respond to a specific question as to the eligibility. PEBTF claims it filed because there were significant penalties if it did not file and later was determined to be an ERISA plan. The trial judge viewed the small number of covered non-governmental employees (1,000) relative to the total plan (85,000), and rejected the PEBTF argument that it is the *number* and not the *percentage* that should be considered. The trial judge referenced a United States Department of Labor June 26, 1995 Advisory Opinion, 95–15A, which stated that 2% was a fair threshold number, and since the percentage in the instant case was closer to 1%, (1000/85000) found it to be *de minimus.*

While we acknowledge the logic in the reasoning of Judge Ford–Elliott, and of the trial judge, the holding in *Scalice* with respect to this issue is currently binding.