Robert John SCALICE, Appellant,

v.

PENNSYLVANIA EMPLOYEES
BENEFIT TRUST FUND,
Appellee.

Superior Court of Pennsylvania.

Argued Jan. 29, 2004.
Filed June 29, 2004.

James D. Belliveau, Pittsburgh, for appellant.

Richard Kirshner, Washington, DC, for appellee.

BEFORE: FORD ELLIOTT, JOYCE and TAMILIA, JJ.

OPINION BY TAMILIA, J.:

¶ 1 This is an appeal from the March 12, 2003 Order granting summary judgment and/or judgment on the pleadings in favor of the defendant/appellee, Pennsylvania Employees Benefit Trust Fund (PEBTF), dismissing plaintiff/appellant Robert John Scalice's complaint for declaratory judgment, and awarding PEBTF $43,795.94, plus costs and interest, relative to its subrogation suit.

¶ 2 Appellant argues summary judgment was inappropriate because there existed questions of material fact with regard to (1) whether PEBTF was an Employee Retirement Income Security Act plan (ERISA); and (2) the accuracy of the amount claimed and whether counsel fees should be awarded. He also argues PEBTF did not have a right to subrogation after January 1, 1998, the date on which PEBTF purportedly relinquished its ERISA qualified status. Appellee replies generally that because it was an ERISA qualified plan at the time of the accident, it is entitled to subrogation.

¶ 3 The facts preceding this lawsuit, as set forth in the trial court Opinion, follow.

On October 30, 1997, [appellant] was seriously injured in an automobile accident. [Appellant] possessed medical insurance benefits under a policy of insurance issued pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL). However, he exhausted the policy limits for his medical insurance. At the time of the accident, [appellant] possessed health insurance with his employer, the Commonwealth of Pennsylvania, Department of Corrections. [Appellee]/Pennsylvania Employees Benefit Trust Fund (PEBTF) insured [appellant] as an employee of the Commonwealth of Pennsylvania, under a group health benefits plan (the Plan) that [appellee] issues and administers. After exhaustion of his first party benefits, [appellant] submitted claims for payment of medical expenses to the PEBTF and the PEBTF paid a number of bills for expenses related to injuries suffered by [appellant] in relation to the October 30, 1997 accident.

The liable third party offered [appellant] the sum of $100,000 for his injuries. [Appellee] is currently asserting a subrogation lien in the amount of $43,795.96 against the funds received from the third party's liability carrier. [Appellee] asserts that 75 Pa.C.S.A. § 1720 does not bar its subrogation right because of the Employee Retirement Income Security Act (ERISA) preemption[.]

Trial Court Opinion, Kopriva, J., 3/12/03 at 2–3. The court concluded,

[s]ince we have held that an employee benefit plan's right of subrogation is determined by the date of the injury and [appellee's] Plan was indisputably an ERISA qualified plan on the date of the accident, it is clear to this Court that the aforementioned standards are met. [Appellee] possesses a right to subrogation against all payments it made on behalf of [appellant] relative to the October 30, 1997 automobile accident.

*Id.* at 6.

¶ 4 Appellant first argues that as a government plan, established for the benefit of the employees of the state of Pennsylvania, PEBTF is not an ERISA quali-

fied plan, and therefore is not entitled to the federal preemption that would allow it to subrogate on its claim against any recovery obtained by him as a result of his accident. Relying on *Haney v. Commonwealth of Pennsylvania Treasurer's Office*, 1992 WL 209265, 1992 U.S.Dist. LEXIS 12637 (1992), appellant argues the PEBTF is precluded from being an ERISA qualified plan due to its status as a "governmental" plan as defined by 29 U.S.C. § 1002(32): a governmental plan is "a plan established or maintained for its employees by ... the government of any State or political subdivision thereof, or by any agency or instrumentality of the foregoing." *Haney, supra*, 1992 WL 209265 at *2, 1992 U.S.Dist. LEXIS at 12367 *5.

¶ 5 Appellee replies, however, and appellant argues in the alternative conceding that PEBTF was ERISA-qualified at some point, that pursuant to *FMC v. Holliday*, 731 F.Supp. 710, 1989 U.S.Dist. LEXIS 6819 (W.D.Pa.1989), an "ERISA qualified plan is entitled to subrogation due to federal preemption of the Pennsylvania Motor Vehicle Financial Responsibility Law[,]" and "once the ERISA qualified status ends, § 1720[, **Subrogation**,] of the Pennsylvania Motor Vehicle Financial Responsibility Law applies." Appellant's brief at 15, appellee's brief at 7. The section provides:

> In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or

excess under section 1719 (relating to coordination of benefits).

75 Pa.C.S.A. § 1720, **Subrogation.**

¶ 6 To successfully defeat a motion for summary judgment, a non-moving party must present sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. *Ertel v. Patriot–News Company*, 544 Pa. 93, 674 A.2d 1038 (1996), *cert. denied*, 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). The non-moving party's inability to advance such evidence establishes that there is no issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* Our standard of review when considering an appeal from an Order granting summary judgment follows:

> Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions and affidavits and other materials demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We apply the same standard of review as the trial court in that we view the record in the light most favorable to the party opposing the motion and resolve all doubts as to the existence of a genuine issue of material fact in favor of the nonmoving party. We will reverse the trial court's grant of summary judgment only upon an abuse of discretion or error of law.

*Philadelphia Ambulatory Care Center, Inc. v. Rite Aid Corp.*, 805 A.2d 613 (Pa.Super.2002), *quoting Curry v. Huron Insurance Co. Inc.*, 781 A.2d 1255, 1257 (Pa.Super.2001), *appeal denied*, 568 Pa. 720, 797 A.2d 913 (2002) (citations omitted); *401 Fourth Street v. Investors Ins. Group*, 823 A.2d 177, 178 (Pa.Super.2003).

¶ 7 As explained infra, we find there existed no genuine issue of material fact, and the court correctly concluded appellee

possessed a right to subrogation against all payments made relative to the October 30, 1997 automobile accident. Accordingly, summary judgment was appropriate.

¶ 8 Our review of the record indicates that as of its inception in 1988, PEBTF operated as a health and welfare trust plan, originated to provide health benefits to the employees of the Commonwealth. N.T., 1/10/02, Affidavit of Tommy Teague, Executive Director of PEBTF. As such, appellee was deemed a "governmental plan" for purposes of ERISA and was exempt from coverage under ERISA, 29 U.S.C. § 1003(b)(1). Thereafter, however, in 1994, appellee extended coverage to private sector employees and sought legal advice from the Department of Labor (DOL) regarding how this action affected its status as a "governmental plan." The DOL responded in its July 12, 1996 letter, "that the inclusion of more than a *de minimis* number of private sector employees as participants in an otherwise governmental plan will result in the plan no longer having the status of a governmental plan within the meaning of section 3(32) of ERISA." Record No. 3, Motion for Summary Judgment, Exhibit A; R.R. at 44. Apparently, appellee then assessed its situation and concluded it was indeed an ERISA plan, as evidenced by its filing of certain required tax statements that detail, among other things, the number of employees covered by the plan.[1] The DOL voiced no concern and posed no challenge to the filing of these ERISA-required documents by appellee. Had it questioned appellee's status as an ERISA-qualified

plan, such challenge would have been made. This documentation of the DOL's involvement in the trustee's decision to transition the PEBTF from a governmental plan to an ERISA plan provided the trial court with evidence to make the legal determination appellee was indeed an ERISA-qualified plan at the time of appellant's October 30, 1997 accident. Thereafter, when significant private sector employees left the plan, appellee reverted to an ERISA-exempt governmental plan. No contradictory evidence was offered by appellant. The court's legal determination was supported by the record.[2]

¶ 9 Having determined that appellee was indeed an ERISA-qualified plan at the time of appellant's October 30, 1997 accident, we turn now to the second part of this argument; whether as an ERISA plan, appellee was still entitled to subrogation after January 1, 1998, when it relinquished its ERISA status and its right to subrogation was preempted by § 1720 of the MVFRL. Appellant's brief at 14. "[I]t is clear that even if this Court determines that PEBTF is entitled to subrogation while an ERISA qualified plan, it is uncontradicted that PEBTF's status as an ERISA qualified plan ended on January 1, 1998. Therefore, any payments made [by appellee to appellant] after that date would not be able to be subrogated." *Id.* We find the trial court's well-reasoned Opinion thoroughly addresses this argument.

¶ 10 In its Opinion, the trial court discusses another trial court's decision, *Wimer v. PEBTF*, 5322 of 2001 (C.P.Westmoreland), 1747 WDA 2002, currently on appeal

---

1. The forms are titled 5500's and are required to be filled out and submitted annually to the Department of Labor by every ERISA benefits plan.

2. Appellant relies heavily on a legal opinion letter by the DOL to another much smaller health plan, Triplett, seeking advice as to

whether it was ERISA-qualified. *Triplett v. United Behavioral Health Systems, Inc.,* 1999 WL 238944, 1999 U.S. Dist. LEXIS 4108 (E.D.Pa.1999). That case, however, can be distinguished on the basis the DOL was not provided with the detailed information available to this trial court.

in this Court, and relied upon by appellant in support of his argument that subrogation rights do not arise until payment is actually made. Therefore, according to appellant, any payments made after January 1, 1998, despite the fact that they were made as a consequence of the October 30, 1997 accident, were not subject to subrogation. *Wimer*, however, is currently scheduled for reargument not for the underlying issue of whether subrogation rights arise at the time of the accident or the date of payment, but rather for a determination of whether the appeal was timely filed; that is to say, whether the court's March 11, 2002 Order addressing and overruling PEBTF's preliminary objections, which included the subrogation issue, prior to the ultimate September 10, 2002 Order granting the motion for summary judgment filed by Wimer, the plaintiff in the underlying declaratory judgment action, was immediately appealable. If so found, PEBTF's direct appeal challenging the subrogation issue would be untimely. As this is not the issue currently under consideration by this Court, we will not delay resolution of this appeal pending *Wimer.*

¶ 11 That being said, in discussing when the right to subrogation arises, either at the date of accident or date of payment, the trial court herein reasoned as follows.

The plaintiff [in *Wimer* ] filed a declaratory judgment action requesting, *inter alia,* a declaration that the subrogation rights of the PEBTF are limited to the amount of medical bills paid on the plaintiff's behalf prior to January 1, 1998. The defendant [in *Wimer* ] argued, as Defendant does herein, that it's [sic] subrogation rights must be determined as of the *date of the accident* and not as to the dates on which payments were actually made. The Court noted that the only change that occurred involved the qualification and status of the defendant under ERISA. Therefore,

the Court held that "the change in the status of the defendant does not warrant the conclusion, as defendant would propose, that the defendant is entitled to subrogation for all payments made after it was no longer qualified under ERISA merely because it was ERISA qualified on the date of the plaintiff's injury." *Wimer, supra.*

We find the [the trial court's] decision uncompelling. Variables that do not appear accounted for in the analysis and holding of *Wimer, supra,* may have the unintended consequence to allow/promote manipulation of the process of determining whether a plan possesses the right of subrogation. For instance, providers must send a bill to the Plan/ PEBTF in order to receive payment. Neither the PEBTF, nor the claimant, nor any court can control when the provider sends the bill for payment. The provider may wait one week, one month, six months or longer after providing the service before seeking reimbursement. In the time it takes the provider to send a bill, the status of the Plan may change. Additionally, neither the claimant nor this court can dictate when the Plan/ PEBTF makes payment to the medical provider. A situation may occur where the PEBTF receives a bill while classified as a governmental plan but holds the bill for such a period of time that when it finally sends payment, the plan has been reclassified as an ERISA qualified plan and therefore entitled to subrogation.

In summary, we fear that following the reasoning of the [*Wimer* trial court] opinion will create a blueprint for inconsistency and manipulation in regards to this and similar cases. Such a result would not be desirable for fair and just treatment of all parties. Conversely, if the Plan's right to subrogation under

ERISA is determined by the date of injury, the abovementioned tactical decisions cannot and do not arise. A neutral starting point defines the obligations. From the instant the claimant suffers injury, both the claimant and those administering the employee benefit plan will have a clear and "manipulation free" point of reference as to whether the plan is entitled to subrogation. Members will know clearly and concisely the appropriate expectation for their coverage and benefits. In addition, the provider and those administering the benefit plan will not possess the opportunity to manipulate the system and dictate results. Further, it is a common insurance industry standard that the benefit and duty of coverage arises at the time of an insured incident.

Trial Court Opinion at 23–25 (footnote omitted). We agree with the trial court. To conclude that for insurance purposes that the date the right to subrogation arises is at the time of payment, rather than the date of injury, would cause legal and bureaucratic chaos.

■ ¶ 12 Appellant's final arguments are (1) the amount claimed by appellee, $43,703.68, was inaccurate, and (2) he is entitled to counsel fees. With regard to the amount requested, appellant argues that due to a clerical error, the lien sought, "exceeds the amount actually paid [to the medical provider] and therefore a substantial issue of material fact exists regarding the computation of the amount of the lien." Appellant's brief at 13.

¶ 13 Appellee, however, has provided a sworn affidavit by the payor, Highmark Blue Cross Blue Shield, that explains there was no error in calculations.

3. [Appellant] questions the accuracy of payments by Highmark to Altoona Hospital which reflect charges of $5,505.18 but payments of $12,558.63.

4. There has been no error. Highmark's contract with Altoona Hospital during the relevant period required reimbursement according to the Diagnostic Related Groups ("DRG") and not according to the hospital's per diem rate. This was standard operating procedure and was dictated by the contract in effect at the time.

5. In some cases, such as the one involving [appellant], the per diem rate charged by the hospital results in a charge less than the amount of payment made by Highmark pursuant to the DRG reimbursement schedule, which may be—and in this case was—higher than the per diem of the hospital.

6. The calculations reflected on the documents referred to by [appellant] are not in error but rather reflect contractually correct payments by Highmark of $12,558.63.

Supplemental Record, 8/14/03 at Exhibit E. A careful review of the record indicates there was no error on the calculations of money ultimately subject to subrogation. There is, therefore, no material issue of fact to consider.

■ ¶ 14 Appellant's last argument is he is entitled to counsel fees. His argument in its entirety follows:

Counsel for PEBTF has rightly recognized the entitlement of counsel for [appellant] to counsel fees. See record at page 101 and *Furia v. Philadelphia,* 180 Pa.Super. 50, 118 A.2d 236. 180 Pa.Super. 50, 118 A.2d 236 (1955). Accordingly, in the event that it is determined that PEBTF has a right to recover any amount, that amount must be reduced by counsel fees in accordance with the

settled case law and the acknowledgement by counsel for PEBTF.

Appellant's brief at 13–14.

■■■ ¶ 15 In that portion of the reproduced record referenced, there appears a May 21, 2002, letter from appellee's counsel to appellant's counsel. In that letter is the following statement: "Had you protected this claim [for subrogation totaling $43,795.96] and obviated this litigation you would have been paid approximately $14,600.00 for your professional services leaving a balance rightfully due to the PEBTF of approximately $29,200.00." This is hardly an admission by appellee that counsel fees are owed to appellant. Rather, it appears to be nothing more than a statement that had appellant agreed to settlement, which it did not, counsel fees perhaps would have been included. Appellant's reliance on *Furia v. Philadelphia,* 180 Pa.Super. 50, 118 A.2d 236 (1955) [3] for the proposition he is entitled to counsel fees is likewise misplaced. In *Furia,* the plaintiff, an injured police officer, never challenged the City's right to subrogation. The issue there was whether a statute providing salary and medical expenses to injured policemen could defeat the claim for counsel fees.

> Subrogation is an equitable doctrine involving the right of legal substitution and may take place with or without contractual agreement between the parties. It is granted as a means of placing the ultimate burden of a debt upon the one who in good conscience ought to pay it, and is generally applicable when one pays out of his own funds a debt or obligation that is primarily payable from the funds of another.

*Kaiser v. Old Republic Ins. Co.,* 741 A.2d 748, 754 (Pa.Super.1999). Here, appellant has fought PEBTF's quest for subrogation consistently. Given our resolution of this case, it is clear appellant's four-year fight not only was ill-fated but unreasonable, negating any arguable right to counsel fees based on equitable principles.

¶ 16 Having found each of appellant's arguments devoid of merit, we affirm the Order granting appellee PEBTF's motion for summary judgment and/or judgment on the pleadings.

¶ 17 Order affirmed.

¶ 18 FORD ELLIOTT, J. files a Dissenting Statement.

DISSENTING STATEMENT BY FORD ELLIOTT, J.:

¶ 1 I must respectfully dissent because I find persuasive the district court's analysis in *Triplett v. United Behavioral Health Systems, Inc.,* 1999 WL 238944 (E.D.Pa. 1999) (memorandum), despite the majority's claim that it is distinguishable.

¶ 2 As the *Triplett* court opined, the language of 29 U.S.C. § 1002(32) of ERISA herein at issue is " 'clearly disjunctive[.]' " *Triplett,* 1999 WL 238944, at *3, quoting *Hightower v. Texas Hospital Association,* 65 F.3d 443, 450 (5th Cir.1995) (other citations omitted). Thus, if a plan is created as a governmental plan, it remains a governmental plan so long as the governmental unit that created it does not abandon it. According to *Triplett,* a governmental plan cannot lose its exempt status

---

**3.** In *Furia v. Philadelphia,* 180 Pa.Super. 50, 118 A.2d 236 (1955), a Philadelphia City policeman, Pirolli, was injured when the patrol car in which he was riding was struck by a vehicle, causing him to lose 24 days work. The City paid Pirolli for the lost time, and Pirolli thereafter secured Attorney Furia to represent him in his claim against the tortfeasor. Attorney Furia advised the City that any subrogation monies received would be subject to his lien. The court found the fees owed to Furia would be prorated between the portion of the fund retained by Pirolli and the portion to which the City was subrogated.

merely by adding private employers and treating itself as ERISA-qualified:

> Were this the case ... a benefit plan would be able to opt into (or perhaps even out of) ERISA. 29 U.S.C. § 1002(32) makes no provision for such options; it merely describes which plans are governmental plans and (by implication) which are not. There is no reason to think that a plan's determination of its status under ERISA is any more meaningful than any litigant's determination of its status under any statute. I thus find that PEBTF's interpretation of itself as a non-governmental plan is not relevant to determining whether PEBTF is in fact a governmental plan. *See Clark v. Group Plan for Employees of North Tonawanda Pub. Schools,* 845 F.Supp. 117, 120 (W.D.N.Y.1994) (disregarding similar 'statement of ERISA rights' in group plan booklet).

*Triplett,* 1999 WL 238944, at *3.

¶ 3 Based upon my reading of the statute and the cases, including *Triplett,* interpreting it, I must therefore respectfully dissent.