Gary E. WIMER, Appellee,

v.

PENNSYLVANIA EMPLOYEES BENEFIT TRUST FUND (PEBTF), Appellant.

Superior Court of Pennsylvania.

Argued Sept. 9, 2004.

Filed Jan. 27, 2005.

---

Richard Kirschner, Washington, DC, for appellant.

Cynthia M. Danel, Pittsburgh, for appellee.

BEFORE: FORD ELLIOTT, JOYCE, STEVENS, MUSMANNO, LALLY-GREEN, TODD, KLEIN, BENDER and BOWES, JJ.

OPINION BY MUSMANNO, J.:

¶ 1 Pennsylvania Employees Benefit Trust Fund ("PEBTF") appeals from the Order denying its Motion for judgment on the pleadings and/or summary judgment, and granting Gary E. Wimer's ("Wimer's") Cross-motion for summary judgment in this declaratory judgment action. We affirm.

¶ 2 The pertinent facts of this case are as follows:

The plaintiff, [Wimer], was injured [in] a motor vehicle accident which occurred on October 3, 1997 in Hempfield Township, Westmoreland County. [Wimer], at the time of the accident, and presently, resides in Mechanicsburg, Cumberland County. At the time of the accident, [Wimer] was employed by the Commonwealth of Pennsylvania, as a corrections officer and was provided healthcare benefits by the defendant [PEBTF]. [Wimer's] medical bills were initially submitted by him to his insurance carrier, Erie Insurance Company, and when his ten thousand dollar first party limit was exhausted[,] subsequent medical bills were submitted to the PEBTF for payment.

On the date of the accident, PEBTF was a self-funded ERISA[1] qualified plan and was entitled to exercise subrogation rights not[ ]withstanding the provisions of [section] 1720 of the Pennsylvania Motor Vehicle [Financial] Responsibility Law ["MVFRL"]. *FMC Corp. v. Holiday [Holliday]*, 498 U.S. 52[, 111 S.Ct. 403, 112 L.Ed.2d 356] (1990). *Holiday [Holliday]* held that a self-insured ERISA plan was pre-empted under Federal law and, therefore, the Pennsylvania anti-subrogation law contained in the [MVFRL] did not apply to such Federal plans. However, PEBTF[,] as of January 1, 1998, had its status changed from a self-funded ERISA plan to a non-ERISA federally regulated plan. After its change in status, the PEBTF could no longer file subrogation claims in those cases involving motor vehicle accidents in Pennsylvania subject to the [MVFRL].

Prior to January 1, 1998, the PEBTF made medical payments on behalf of [Wimer] totaling one hundred eighty-six ($186.00) dollars. Subsequent to January 1, 1998, the PEBTF made additional medical payments totaling thirty-five thousand eight hundred fifteen and 90/100 ($35,815.90) dollars.

PEBTF asserted its subrogation claim in the amount of thirty-five thousand eight hundred fifteen and 90/100 ($35,-815.90) dollars which is the total of the medical bills paid after its change in status. [Wimer] refused to pay the subrogation claim even though he settled his third-party liability action on December 12, 1999. Under the PEBTF's Summary Plan Description, it may terminate coverage for any participant that fails or refuses to cooperate with it in the exercise of its subrogation rights. Since [Wimer] refused to pay the subrogation claim, the PEBTF[,] on June 15, 2001, terminated his coverage even though [Wimer] continues to be an employee of the Commonwealth of Pennsylvania.

[Wimer] filed the subject action, a Complaint for Declaratory Judgment[,] against [PEBTF] on September 10, 2001, and requested [that the trial court] enter a Declaratory Judgment providing that any subrogation rights of PEBTF be limited to the medical bills paid by it prior to January 1, 1998, ordering PEBTF to reinstate [Wimer's] medical benefits retroactive to June 14, 2001, order PEBTF to reimburse [Wimer] for any medical bills or prescriptions he paid subsequent to the termination of his benefit[,] and direct PEBTF to pay his costs and counsel fees for this action. [PEBTF] ... filed preliminary objections and a petition to transfer this action to Dauphin County.... Also included in the preliminary objections were claims that [Wimer] had failed to state a

1. 29 Pa.C.S.A. § 1001 *et seq.*

valid cause of action and ... failed to exhaust his available internal remedies by failing to take an appeal to [PEBTF's] board of trustees.

[PEBTF's] claim that [Wimer] failed to state a cause of action was essentially based on its argument that ... PEBTF continues to have the right of subrogation because, at the controlling date, the time and day of the accident, it was an ERISA-type plan. Of course, [Wimer] asserts that other than the aforesaid one hundred eighty-six ($186.00) dollars, the PEBTF has no subrogation rights to the other medical payments because at the time those payments were made, [PEBTF] was a non-ERISA plan. Both parties submitted briefs and after oral argument[,] [the trial court], after consideration of same and joint stipulation of facts submitted by the parties[,] entered an Order on March 11, 2002, dismissing the Petition to Transfer Venue and the preliminary objections.[2]

[PEBTF] ... filed a Motion for Judgment on the Pleadings and/or Summary Judgment in which it raises the identical issues that were argued before [the trial court] as a result of the preliminary objections. [Wimer] ... filed an answer to [PEBTF's] motion and, in addition thereto, a cross-motion for summary judgment.

Trial Court Opinion, 9/10/02, at 1–6 (footnotes omitted).

¶ 3 On September 10, 2002, the trial court denied PEBTF's Motion for judgment on the pleadings and/or summary judgment, and granted Wimer's Cross-motion for summary judgment. The trial court declared that:

[T]he subrogation rights of the defendant are limited to the amount of medical bills paid on behalf of [Wimer] prior to January 1, 1998, and [Wimer] is hereby ORDERED to pay the sum of one hundred eighty-six ($186.00) dollars to [PEBTF] in full satisfaction of [PEBTF's] liens as a result of the motor vehicle accident that occurred on October 10, 1997.

Order of Court, 9/10/02. The trial court further ordered PEBTF to "reinstate to [Wimer] those benefits terminated and/or suspended by [PEBTF] retroactive to June 14, 2001," and to "reimburse [Wimer] for all medical bills and prescriptions that he has paid for since the termination of his benefits by [PEBTF]." *Id.* The trial court denied Wimer's request for counsel fees and costs.

¶ 4 PEBTF filed an appeal of the trial court's September 10, 2002 Order. PEBTF raises the following issues on appeal:

1. Did the trial court err when it concluded that Wimer was not obligated to exhaust his contractually prescribed internal remedies prior to commencing this litigation?

2. Did the trial court err when it interpreted Commonwealth law to limit the PEBTF's subrogation rights solely to bills paid on Wimer's behalf prior to January 1, 1998?

*See* Brief of Appellant at 4.

¶ 5 Before addressing these issues, we must first consider Wimer's argument that this appeal is untimely. Wimer asserts that PEBTF was required to file an appeal of the trial court's March 11, 2002 Order because that Order was a final order, pursuant to *Nationwide Mutual Insurance*

---

2. The trial court also ordered PEBTF to file a responsive pleading to Wimer's Complaint within twenty days of the March 11, 2002 Order. PEBTF filed its Answer and New Matter on April 1, 2002.

**12**

Co. v. Wickett, 563 Pa. 595, 763 A.2d 813 (2000).

¶ 6 In Wickett, the Pennsylvania Supreme Court held that, pursuant to section 7532 of the Declaratory Judgment Act, 42 Pa.C.S.A. § 7532, "any order in a declaratory judgment action that either affirmatively or negatively declares 'rights, status, and other legal relations'" constitutes a final order. Wickett, 763 A.2d at 817. Our Supreme Court further held that it was not necessary that courts issuing declaratory judgment orders "make explicit . . . that they are entering a declaratory judgment in favor of or against the requesting party." Id. at 818. Thus, our Supreme Court concluded that the trial court erred in reconsidering the pre-trial order sustaining preliminary objections in the underlying declaratory judgment action, more than thirty days after entry of that order, because the order had declared the rights of the parties. Id.[3]

¶ 7 In Wickett, the plaintiffs filed declaratory judgment actions seeking a declaration that the Workers' Compensation Act[4] did not preclude them from recovering underinsured motorist benefits from Huron Insurance Company, the insurer of the plaintiffs' employer's vehicle, in which the plaintiffs were traveling at the time of the relevant accident. The defendants in Wickett argued in preliminary objections that the exclusivity provisions of the Workers' Compensation Act, in conjunction with relevant portions of the MVFRL, precluded employees who were injured in the course and scope of their employment from recovering underinsured motorist benefits from their employer's insurer.

Wickett, 763 A.2d at 815–16. The trial court in Wickett granted the defendants' preliminary objections and dismissed the plaintiffs' complaints, ruling that the plaintiffs were precluded from recovering underinsured motorist benefits under the circumstances of that case.

¶ 8 In the instant case, PEBTF raised three preliminary objections to Wimer's Complaint. The trial court overruled all three preliminary objections, and issued the following order:

AND NOW, this 11th day of March, 2002, upon consideration of the preliminary objections and petition to transfer venue filed on behalf of [PEBTF], as well as the briefs and joint stipulations of fact submitted by the parties, it is hereby ORDERED and DECREED that the preliminary objections and petition to transfer venue are denied. [PEBTF] is directed to file a responsive pleading to [Wimer's] complaint within twenty (20) days from the date of this order.

Order of Court, 3/11/02.

¶ 9 Relying on Wickett, Wimer argues that the trial court's March 11, 2002 Order affirmatively declared his rights and negatively declared PEBTF's rights, by ruling that PEBTF had no basis to assert a lien for payments made to Wimer after January 1, 1998. See Trial Court Opinion, 3/11/02, at 7–10. We disagree.

¶ 10 The trial court's March 11, 2002 Order makes clear that the case was not yet ripe for a formal declaration. The Order required PEBTF to respond to Wimer's Complaint, as is normally the case

---

**3.** In Motorists Mutual v. Pinkerton, 574 Pa. 333, 830 A.2d 958 (2003), the Pennsylvania Supreme Court qualified its holding in Wickett, by ruling that, when a trial court enters a declaratory judgment order after a trial, the appellant must file a post-trial motion, pursuant to the Pennsylvania Rules of Civil Procedure, and then file an appeal from the trial court's ruling on the post-trial motion. Id. at 962–65.

**4.** 77 P.S. § 1 et seq.

upon a trial court's denial of preliminary objections. *See* Pa.R.C.P. 1028(d) (providing that, "[i]f the preliminary objections are overruled, the objecting party shall have the right to plead over within twenty days after notice of the order or within such other time as the court shall fix"). Thus, it is clear that the trial court did not intend to make a final declaratory judgment ruling in its March 11, 2002 Order. Further, although the trial court set forth its reasons for denying the preliminary objections in its accompanying decision, those reasons are not specifically set forth in the trial court's Order.

¶ 11 In addition, the instant case is distinguishable from *Wickett* because the trial court in *Wickett granted* the defendant's preliminary objections and dismissed the plaintiffs' complaints, thus putting the plaintiffs out of court, whereas in the instant case, the trial court *denied* PEBTF's preliminary objections and directed PEBTF to file a responsive pleading to Wimer's Complaint. Clearly, the trial court's March 11, 2002 Order puts this case in a different procedural posture from that of *Wickett*.

¶ 12 By contrast, the trial court's September 10, 2002 Order, ruling on the parties' Motions for summary judgment, provided as follows:

AND NOW, this 10th day of September, 2002, it is hereby ORDERED that [PEBTF's] motion for judgment on the pleadings and/or summary judgment is denied. It is further ORDERED that [Wimer's] cross motion for summary judgment is granted. *It is declared that* the subrogation rights of [PEBTF] are limited to the amount of medical bills paid on behalf of [Wimer] prior to January 1, 1998, and [Wimer] is hereby ORDERED to pay the sum of one hundred eighty-six ($186.00) dollars to [PEBTF] in full satisfaction of [PEBTF's] liens as a result of a motor vehicle accident that occurred on October 10, 1997. It is further ORDERED that [PEBTF] will, within thirty (30) days of this Order, reinstate to [Wimer] those benefits terminated and/or suspended by [PEBTF] retroactive to June 14, 2001. It is further ORDERED that [PEBTF] will reimburse [Wimer] for all medical bills and prescriptions that he has paid for since the termination of his benefits by [PEBTF]. [Wimer's] request for counsel fees and costs is hereby denied.

Order of Court, 9/10/02 (emphasis added). Clearly, the trial court intended this Order to constitute a declaration of the parties' rights. The trial court's March 11, 2002 Order denying PEBTF's preliminary objections was simply a preliminary ruling, and not the final declaration of the parties' rights, as in *Wickett*. In so holding, we refer to the words of Justice Saylor of the Pennsylvania Supreme Court in *Wickett*:

I am troubled by the absence of any express indication within the Declaratory Judgments Act to the effect that the Legislature wished to alter the usual rules of appealability in the context of declaratory judgment proceedings, as has been included within other enactments when the purpose is as such. *See, e.g.*, 42 Pa.C.S. § 7320 (providing explicitly that appeals may be taken from various interlocutory orders, such as an order denying an application to compel arbitration). Moreover, the primary and direct purpose of the Declaratory Judgments Act, a version of the Uniform Declaratory Judgments Act, was to authorize courts to grant declaratory relief in the face of objections that such relief represented the giving of advisory opinions rather than the adjudication of controversies. *See generally Petition of Kariher*, 284 Pa. 455, 463, 131

A. 265, 268 (1925). As the language of Section 7532 pertaining to the finality of "the declaration" is essential to this central purpose, I would read such language as aligning declaratory judgment jurisprudence with that which applies to civil actions generally, rather than as creating a separate and unique scheme for the appeal of otherwise interlocutory orders in declaratory judgment proceedings.

*Wickett,* 763 A.2d at 819 (Saylor, J., dissenting).

¶ 13 We believe our decision in this matter advances the purpose referred to by Justice Saylor of "aligning declaratory judgment jurisprudence with that which applies to civil actions generally, rather than creating a separate and unique scheme for the appeal of otherwise interlocutory orders in declaratory judgment proceedings." *Id.* Accordingly, PEBTF was not required to file a Notice of appeal within thirty days of the trial court's March 11, 2002 Order. This appeal, filed within thirty days of the trial court's September 10, 2002 Order, is therefore timely.

¶ 14 We now turn to PEBTF's arguments on appeal. PEBTF first contends that the trial court erred by not dismissing Wimer's Complaint because of Wimer's failure to exhaust his internal remedies. PEBTF asserts that, after it terminated Wimer's coverage, Wimer was required, pursuant to the terms of the PEBTF Plan, to file an appeal of the termination of coverage decision to the PEBTF Board of Trustees. PEBTF contends that Wimer failed to file such an appeal, and that the trial court erred in failing to enforce the parties' contract as written.

¶ 15 Our review of a trial court's ruling on a motion for summary judgment is as follows:

[O]n an appeal from the grant of a motion for summary judgment ..., [a] reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law." Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne University of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations omitted).

¶ 16 PEBTF relies on various provisions of the Summary Plan Description and the Plan Document to support its claim that Wimer failed to exhaust his internal remedies.[5] *See* Brief of Appellant

---

5. The Summary Plan Description was dated October 1998, and the Plan Document was dated 1997. These documents describe the rights of PEBTF participants, such as Wimer. *See* "Statement of Undisputed Facts and Controlling Case Law Which Warrant Dismissal

at 13–18. However, in the provisions cited by PEBTF, we discern no mandatory language requiring a participant to appeal to the Board of Trustees as a prerequisite to filing a declaratory judgment action. The language cited by PEBTF provides the participant with a *right* to appeal to the Board of Trustees on questions of eligibility for benefits and denials of claims, but PEBTF cites no language *requiring* the exhaustion of such an appeal before commencing an action in court.

¶ 17 PEBTF has indicated that the parties' rights under the Summary Plan Description are contractual in nature. Our reading of the contract provisions cited by PEBTF reveals no requirement that a participant exhaust his appeals to the Board of Trustees before filing an action in court.

¶ 18 PEBTF cites one mandatory provision from the Summary Plan Description:

As a condition of continued eligibility for benefits under the PEBTF, if you or your eligible dependent(s) are involved in a matter in which the PEBTF is exercising its subrogation rights, you and they *must cooperate fully and entirely to enable the PEBTF to pursue and exercise its full 100% subrogation rights.* Failure to cooperate fully will result in your and their permanent disqualification from all PEBTF benefits.

Brief of Appellant at 14 (citing Summary Plan Description at p. 106) (emphasis added).

¶ 19 However, the Summary Plan Description also provides as follows:

If you or any of your enrolled dependent(s) receive benefits under the PEBTF for injuries caused by someone else's negligence, the PEBTF has the right to seek from the responsible party, repayment in full for such benefits. *This right of subrogation does not apply to any payments the PEBTF makes as a result of injuries to you or your dependent(s) sustained in a motor vehicle accident.*

Summary Plan Description, at p. 106 (emphasis added). The Summary Plan Description acknowledges that PEBTF, as a non-ERISA-qualified plan, does not have a right of subrogation for injuries related to a motor vehicle accident. *See* 75 Pa.C.S.A. § 1720. Thus, the mandatory language cited above, requiring a participant to cooperate fully in the exercise by PEBTF of its subrogation rights, does not apply in a case where injuries were sustained in a motor vehicle accident, and the Summary Plan Description itself expressly indicates that PEBTF does not have subrogation rights in such a case.

¶ 20 PEBTF also cites various provisions of the Plan Document in support of its claim that Wimer failed to exhaust his internal remedies. *See* Brief of Appellant at 15–16. Some of these provisions concern PEBTF's enforcement of its subrogation rights, and provide that PEBTF "is entitled to reimbursement of the total amount of benefits it disbursed as a result of" a personal injury to a plan member, and that the member "shall do nothing to prejudice the right [of subrogation] and shall cooperate with the PEBTF in the enforcement of its subrogation and/or reimbursement rights." Plan Document, § 1.19. PEBTF also cites a provision of the Plan Document that gives an employee a right of appeal of a denial of eligibility. Plan Document, § 3.08.

¶ 21 We note that the Plan Document is not the effective document after January 1,

of Complaint," at ¶ 8, in Motion for Summary Judgment (by PEBTF), 4/22/02; Brief of Appellee at 18.

1998; thus, the provisions of the Plan Document cited by PEBTF do not apply to PEBTF's claim of subrogation for benefits paid after that date. Similarly, section 3.08 of the Plan Document does not apply to payments made by PEBTF after January 1, 1998.

¶ 22 The purpose of the Declaratory Judgment Act ("the Act") is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations ...." 42 Pa. C.S.A. § 7541(a). The Act allows a declaratory judgment action to proceed despite the existence of an alternative remedy. *See* 42 Pa.C.S.A. § 7537 (stating that "the existence of an alternative remedy shall not be a ground for the refusal to proceed under this subchapter"). In addition, "a declaratory judgment is appropriate in proceedings in which the judgment will terminate uncertainty." *In re Mengel,* 287 Pa.Super. 186, 429 A.2d 1162, 1166 (1981). In the instant case, a declaratory judgment served to terminate the uncertainty with respect to PEBTF's subrogation rights as to payments it made on Wimer's behalf.

¶ 23 In addition, "[t]he rule requiring exhaustion of administrative remedies is not intended to set up a procedural obstacle to recovery; the rule should be applied only where the available administrative remedies are adequate with respect to the alleged injury sustained and the relief requested." *Ohio Cas. Group of Ins. Companies v. Argonaut Ins. Co.,* 514 Pa. 430, 525 A.2d 1195, 1198 (Pa.1987). In the instant case, the relief sought by Wimer, *i.e.,* a declaration that PEBTF is not entitled, pursuant to the MVFRL, to subrogation for payments made to Wimer after January 1, 1998 does not fall within the types of appeals that may be filed with the Board of Trustees pursuant to the Summary Plan Description.

¶ 24 For all of the above reasons, we conclude that there is no merit to PEBTF's claim that Wimer failed to exhaust his internal remedies before proceeding with this action.

¶ 25 PEBTF next contends that the trial court erred in limiting PEBTF's subrogation rights to payments made prior to January 1, 1998. PEBTF asserts that Wimer's accident occurred while PEBTF was an ERISA-qualified plan. PEBTF argues that the right to subrogation must be determined under the law as it existed at the time of the events giving rise to the claim.

¶ 26 "Subrogation is an equitable doctrine and must depend upon inherent justice and some principle of equity jurisprudence, usually unjust enrichment." *In re McGrath's Estate,* 159 Pa.Super. 78, 46 A.2d 735, 737 (1946). "It cannot, therefore, be allowed where it would be contrary to public policy, or where it accomplishes by indirection that which a statute forbids to be done by direction." *Id.*

¶ 27 The MVFRL provides as follows with regard to the right of subrogation:

### § 1720. Subrogation

In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits, benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits paid or payable by a program, group contract or other arrangement whether primary or excess under section 1719 (relating to coordination of benefits).

75 Pa.C.S.A. § 1720. In *FMC Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the United States Su-

preme Court held that ERISA employee benefit plans are "exempt from direct state insurance regulation," and, therefore, "ERISA pre-empts the application of [section] 1720 of Pennsylvania's Motor Vehicle Financial Responsibility Law . . . ." *Id.* at 65, 111 S.Ct. 403.

¶ 28 The trial court held that, on October 3, 1997, the date of Wimer's accident, PEBTF was an ERISA-qualified plan. Trial Court Opinion, 3/11/02, at 8. The trial court noted that PEBTF's 1997 Plan Document "permitted subrogation for healthcare benefits paid as a result of auto accidents." *Id.* However, the trial court held that, as of January 1, 1998, PEBTF was no longer an ERISA-qualified plan, and, therefore, PEBTF was subject to section 1720 of the MVFRL, "which specifically precludes subrogation from plaintiff's tort recovery." *Id.* at 9.

¶ 29 PEBTF asserts that the trial court erred in this determination because its right to subrogation depends on the date of the accident from which the injuries resulted, not on the date on which payments were made to the injured party. We disagree. As this Court stated in *Daley–Sand v. West American Ins. Co.*, 387 Pa.Super. 630, 564 A.2d 965 (1989),

> Subrogation is an equitable principle. . . . *[I]t presupposes an actual payment and satisfaction of the debt or claim at issue* by the one who asks for the right to subrogate.

*Id.* at 969–70 (citation omitted) (emphasis added).

¶ 30 In *Daley–Sand,* the plaintiff was seriously injured in a motor vehicle accident. *Id.* at 967. The tortfeasor's insurance company offered to settle with plaintiff if she would sign a release. The plaintiff notified her own insurance company of the offer and asked for consent to settle. Plaintiff's insurance company refused to give consent because the com-

pany was investigating whether, in giving consent, it would relinquish its potential subrogation opportunities. *Id.*

¶ 31 The plaintiff then filed a petition to "resolve subrogation" with the trial court. *Id.* at 968. The trial court authorized the plaintiff to settle with the tortfeasor's insurance company, but stayed the relief for thirty days to allow the plaintiff's insurance company to tender to plaintiff the settlement amount, thus perfecting the company's subrogation rights. *Id.* The plaintiff's insurance company appealed. On appeal, this Court concluded that the defense of the plaintiff's insurance company, that it was entitled to its subrogation rights, was not a valid defense. *Id.* at 970. In so holding, this Court held, *inter alia,* that the plaintiff's insurance company "*has not yet paid* [the plaintiff's] claim." *Id.* (emphasis added). "Thus, it has only a possible, future subrogation right." *Id.;* *see also Hagans v. Constitution State Service Co.,* 455 Pa.Super. 231, 687 A.2d 1145, 1149 (1997) (stating that "[s]ubrogation presupposes an actual payment and satisfaction of a debt or claim by the entity asking to be subrogated ('subrogee')"). Similarly, in the instant case, PEBTF's right of subrogation did not arise until, at the earliest, the dates on which PEBTF paid the benefit amounts to Wimer.

¶ 32 The trial court found that the cases cited by PEBTF, in support of its claim that its right to subrogation arises on the date of the accident from which the injuries resulted, not on the date on which payments were made, are distinguishable. We agree.

¶ 33 In *DePaul Concrete v. Workers' Compensation Appeal Board (White),* 734 A.2d 481 (Pa.Cmwlth.1999), the issue was whether the employer's cause of action for subrogation, with regard to workers' compensation benefits paid on the claimant's

behalf, arose on the date of the claimant's injury or on the date when the claimant received a tort recovery from a third party. *Id.* at 485. On the date of the claimant's injury, section 1720 of the MVFRL precluded an employer from asserting a right of subrogation from a claimant's tort recovery, with respect to workers' compensation benefits paid. *Id.* at 483. Prior to the date of the claimant's tort recovery, section 1720 was amended so that it no longer precluded subrogation with regard to workers' compensation benefits paid. *Id.* The Commonwealth Court rejected the employer's claim that the date of the claimant's tort recovery was the controlling date for accrual of the employer's cause of action for subrogation, stating that there was no authority to support that position. *Id.* at 485–86. The Commonwealth Court held that the amended section 1720 did not apply because the claimant's injury occurred before the effective date of the amendment, and that section 1720 deals with substantive rights and cannot be applied retroactively to change rights that existed on the date of the accident. *Id.* at 484–86.

¶ 34 Unlike *DePaul Concrete,* the instant case does not involve an issue of whether *an amended statute* should be applied retroactively to allow an employer to assert a claim of subrogation when an employee recovers from a third-party. Rather, the instant case involves whether a payor of benefits, who *changes its own status* under existing legislation, may still claim the benefit of its prior status, which allowed it the right of subrogation. In *DePaul Concrete,* the issue did not arise, as in the present case, of whether a cause of action for subrogation arises before the benefits, for which subrogation is sought, have been paid.

¶ 35 In *Bell v. Koppers,* 481 Pa. 454, 392 A.2d 1380 (1978), relied on by PEBTF, the plaintiffs, employees of U.S. Steel Corporation ("U.S.Steel"), sued Koppers Company, Inc. ("Koppers"), on August 25, 1976, for personal injuries and wrongful death caused by occupational exposures to coke oven emissions. Koppers was the manufacturer of the coke ovens. Koppers filed a third-party complaint against U.S. Steel seeking contribution or indemnity. U.S. Steel then filed preliminary objections to the third-party complaint. The trial court sustained the preliminary objections, and this Court affirmed. On appeal, the Pennsylvania Supreme Court reversed. Prior to February 5, 1975, Pennsylvania case law allowed a third party, who had been sued by an injured employee, to obtain contribution or indemnity from the employer. Effective on February 5, 1975, an amendment to section 303 of the Workers' Compensation Act provided that an employer is not liable for damages, contribution, or indemnity to a third party. In *Koppers,* the Pennsylvania Supreme Court held that because the employee was injured before February 5, 1975, any negligence by Koppers would have occurred before that date; therefore, the amendment to section 303 did not apply retroactively, and Koppers was entitled to seek its substantive rights of contribution and indemnity from U.S. Steel. *Koppers,* 392 A.2d at 1382.

¶ 36 As in *DePaul Concrete,* the issue in *Koppers* was whether an amendment to the relevant statute, which extinguished the substantive rights of Koppers to seek contribution or indemnity from the employer, should be applied retroactively. In the instant case, the issue is whether the substantive right involved, *i.e.,* PEBTF's right of subrogation, is extinguished, not because of an intervening change in the law, but because of a change in the status of PEBTF under existing law. Thus, *Koppers* is distinguishable because the issue of the retroactive application of a newly enacted amendment to the relevant statute,

crucial to the *Koppers* decision, is not present in the instant case.

¶ 37 PEBTF also cites *Gokalp v. Pa. Manufacturers' Assoc. Ins. Co.*, 553 Pa. 452, 719 A.2d 1033 (1998), in support of its position that its right to subrogation depends on the date of the accident from which the injuries resulted, not on the date on which payments were made. In *Gokalp,* an employee was injured in a motor vehicle accident before the 1993 amendment to section 1720 of the MVFRL. Before the 1993 amendment, the employer had no right of subrogation. The employee received the proceeds of a third-party settlement after the amendment to section 1720; thus, the employee received her proceeds at a time when the employer had a right of subrogation. The trial court granted summary judgment in favor of the employer's workers' compensation carrier, and this Court reversed. On further appeal, an evenly divided Pennsylvania Supreme Court affirmed. Relying, *inter alia,* on *Bell v. Koppers,* the Supreme Court's Opinion in support of affirmance reasoned that the workers' compensation carrier for the employer had no right of subrogation because the employee's cause of action arose before the amendment to section 1720. *Gokalp,* 719 A.2d at 1035. However, the Opinion in support of reversal opined that the carrier's subrogation rights *did not vest until the employee received the proceeds of her third-party settlement because "it is only when the claimant has received the compensation from the third-party tortfeasor that the carrier's subrogation rights vest." Id.* at 1038 (Opinion in Support of Reversal) (emphasis added).

¶ 38 PEBTF's reliance on *Gokalp* is distinguishable for the same reasons as previously stated in regard to *DePaul Concrete* and *Bell v. Koppers.* Basically, these three decisions reiterate the general principle that legislation cannot retroactively affect the substantive rights of the parties. Further, although neither of the Opinions in *Gokalp* are precedential because our Supreme Court in that case was equally divided, we take some guidance from the Opinion in support of reversal. In that Opinion, Justice Cappy concluded that the subrogation rights of the employer's insurance carrier did not vest until the employee received the proceeds of the settlement of her third-party action. If we applied such reasoning to the facts of the present case, in which Wimer settled his third-party liability action on December 12, 1999, PEBTF's subrogation rights did not arise until at least that date. On that date, PEBTF was not an ERISA-qualified plan, and, therefore, was precluded from subrogation.

¶ 39 For all of the above reasons, we conclude that PEBTF's claim that the trial court erred in limiting PEBTF's subrogation rights to payments made on Wimer's behalf prior to January 1, 1998, has no merit.

¶ 40 Order affirmed.

¶ 41 Judge KLEIN joins the majority and files a Concurring Statement.

¶ 42 Judge STEVENS joins the majority and Judge KLEIN's Concurring Statement.

CONCURRING STATEMENT BY KLEIN, J.:

¶ 1 I fully agree with the thoughtful and thorough opinion of Judge Musmanno. I write separately only to note that the issue of whether PEBTF was *ever* an ERISA-qualified plan and whether it is ever entitled to subrogation has not yet been decided by our appellate courts. PEBTF started as a governmental plan, and as such was not subject to ERISA. *See Haney v. Commonwealth of Pennsylvania Treasur-*

*er's Office*, Civ. A. No. 91–6927, 1992 WL 209265, 1992 U.S. Dis. LEXIS 12637 (E.D.Pa. Aug.18, 1992); *see also* 29 U.S.C. § 1003(b)(1). It was only in March, 1994 that PEBTF extended its plan coverage to some non-governmental employees and started filing forms with ERISA when it got a non-committal answer as to whether or not it was covered.

¶ 2 One issue is whether the number of non-governmental employees was ever more than a *de minimus* number, a question not answered by ERISA. Approximately 1,000 of the 85,000 plan members were non-governmental employees. One view is that the small *percentage* of covered non-governmental employees (1,000) relative to the total plan participants (85,-000) means that there are only a *de minimus* number of non-governmental employees. The other view is that 1,000 is a large enough absolute *number* of employees to go beyond the *"de minimus"* classification.

¶ 3 Another related issue was addressed by a divided panel of this Court in *Scalice v. PEBTF*, 854 A.2d 987 (Pa.Super.2004). I note that the Pennsylvania Supreme Court granted a petition for allowance of appeal in *Scalice* on November 18, 2004, at No. 395 WAL 2004 and listed the case for argument on March 7, 2005, at 38 WAP 2004.

¶ 4 The *Scalice* majority held that because the U.S. Department of Labor did not challenge the filing of PEBTF under ERISA, after non-governmental employees were included in the plan, that converted the plan into an ERISA plan. In dissent, Judge Kate Ford Elliott took the position that if a plan is created as a governmental plan (and thus exempt from ERISA), it remains a governmental plan so long as the governmental unit that created it does not abandon it. In support of this proposition, Judge Ford Elliott cited a

memorandum decision from the Federal Court for the Eastern District of Pennsylvania, *Triplett v. United Behavioral Health Systems, Inc.*, 1999 WL 238944 (E.D.Pa.1999) (memorandum decision). *Scalice*, 854 A.2d at 993–94.

¶ 5 In the instant case, because Wimer made no objection to the subrogation claim for the small amount of benefits paid ($186) before it was clear that PEBTF was no longer an ERISA plan, I believe that the majority was correct in deciding this case on the issue of the timing of the payments and not reaching those issues listed above. I think it is important to note that those issues may arise in other circumstances and still must be considered, at least until there is a definitive ruling by the Pennsylvania Supreme Court, hopefully in *Scalice*.